[No. G031641. Fourth Dist., Div. Three. Feb. 24, 2005.]

In re BRYAN WAGNER on Habeas Corpus.

COUNSEL

Steven H. Hertz for Petitioner.

Benton, Orr, Duval & Buckingham and Brenda L. McCormick for Pamela Lee Iles.

OPINION

**RYLAARSDAM, Acting P. J.**—We grant the petition of Bryan Wagner for a writ of habeas corpus after his incarceration for an alleged violation of a condition of his probation. The trial judge failed to provide petitioner with required due process protections. We also order that, if petitioner so requests, the case be assigned to another judge to determine whether he violated the conditions of his probation and for further proceedings in a manner provided by law.

## FACTUAL AND PROCEDURAL BACKGROUND

In his petition for a writ of habeas corpus, petitioner alleged that he had pleaded guilty to a misdemeanor count of spousal battery and was sentenced to "three years modified probation under Judge Iles [*sic*] supervision." He stated that, as a condition of probation, he was required to make certain payments by January 7, 2003. When he appeared before Judge Iles on December 18, 2002, to request modification of the terms under which these payments were to be made, Judge Iles referred him to her judicial administra-

tor to discuss the matter. He further asserted that, after this conversation, the judicial administrator reported to Judge Iles that "[p]etitioner was unwilling to pay a donation of $1,000.00 to the victim witness assistance fund," whereupon Judge Iles, without making any inquiry of him, ordered him taken into custody without bail and set a probation revocation hearing for January 16, 2003, almost a month later.

We issued a stay, ordered petitioner released from custody, and invited an informal reply to the petition. The Office of the District Attorney responded with a letter stating, "We must inform the Court that the People were not present at the December 18, 2002, hearing at which the petitioner was taken into custody, nor were we involved in any representations the lower court may have made on December 20 or December 23 regarding petitioner's matter. Consequently, we cannot provide this Court with any information or explanation of the lower court's action, and we must decline to become involved in this imbroglio." Thereafter we issued our order to show cause, whereupon the Office of the District Attorney sent us another letter stating that it would not file a return and would not participate in any oral argument. The letter concluded, "As previously noted in our January 6 letter to the Court, we must respectfully decline to become involved in this imbroglio." Judge Iles filed a return to the petition through a private law firm.

Judge Iles's return alleged, inter alia, that: (1) petitioner "was remanded into custody because on December 16, 2002, his probation was lawfully revoked for his failure to appear and provide proof of enrollment in the [rehabilitation] program or, alternatively, to provide a letter from his physician explaining why [petitioner] was continuing to be prescribed narcotic drugs . . . ," (2) the court "had the authority to order the payment pursuant to Penal Code section 1203.097[, subdivision] (a)(11)(A)" (italics omitted), and (3) the "court did not represent that [petitioner] would be released from custody if he provided evidence of his medical condition."

The record provided to us did not include a reporter's transcript. And the docket reports and clerk's minutes did not enable us to determine what had transpired before, during, and after petitioner was in custody. We therefore issued an order to the superior court to conduct an evidentiary hearing before another judge and to make findings of fact as to specific issues. Judge Roger D. Randall conducted the hearing and subsequently provided us with his findings.

We relate Judge Randall's findings made in response to the issues identified by us to the extent they are relevant to our discussion.

Judge Randall found that petitioner's conditions of probation included: "[t]hat he pay a restitution fine of $200, stayed to 11/5/02; [¶] . . . that he pay the Domestic Violence Fund $200, stayed to 11/5/02; [¶] . . . that he pay $1000 to Laura's House, a battered women's shelter; [¶] . . . that he report in person to the Domestic Violence Judicial Assistant on 11/5/02 to furnish proof of payment to the shelter; [¶] . . . [¶] . . . [and] that he complete and enroll in a batterer's program through Human Options, reporting in person to the court on 8/19/02 at 8:30 AM in the DV Judicial Assistant's office to furnish proof of enrollment . . . ." The findings also state that "[p]etitioner received and signed a [Domestic Violence Project Team] referral on 8/5/02 which ordered him to make contact within one week with the Health Care Agency, via Bill Dellefield, MFT, for the[]Perinatal Treatment Program and Drug and Alcohol Assessment; and with Children and Youth Services via Michael Bucaro, Psy.D."

Judge Randall also found that the original terms and conditions of probation were modified on several occasions. These modifications included an extension of time to January 7, 2003, to pay all moneys previously ordered to be paid, and on November 26, 2002, petitioner was ordered to attend and successfully complete a substance abuse program and present proof of his enrollment to the judicial assistant on December 16. On each occasion when conditions of probation were modified, petitioner was present in court and had adequate notice of the changes.

Additionally Judge Randall found "[p]etitioner was eligible for admission in the domestic violence substance abuse program by virtue of his background and the circumstances of his offense. He was not ineligible to participate because of a medical condition." However, on December 13, 2002, Dellefield sent a report to the court stating that petitioner "was ineligible to participate in the program so long as he was taking prescription addictive drugs." Having been so advised by Dellefield on November 15, petitioner was aware that he could not participate in the substance abuse program unless he stopped using the prescription medications or "submit[ted] proof that his continued use of such drugs was medically necessary."

On December 16, petitioner violated the terms of his probation by failing to appear and failing to provide proof of enrollment in the substance abuse program. A bench warrant was issued for his arrest. When petitioner came to court on December 18, the warrant was recalled. Correspondence from the substance abuse program (presumably the Dellefield report the court received on December 13) was filed.

Judge Randall further found: "Petitioner told the court he was taking the prescription medicines . . . for carpal tunnel syndrome, and that he had been told he could not participate in the program while he was taking these medications. The court noted [p]etitioner was not enrolled in the substance abuse program due to medical reasons and ordered him to appear for further proceedings in that regard on 1/8/03, with a hearing to be conducted at that time to consider a doctor's report regarding [p]etitioner's medical eligibility for the substance abuse program.

"The judge ordered [p]etitioner to report to the judicial assistant to set up a payment schedule for his fees and donation. Petitioner reported to the [j]udicial [a]ssistant, Leslie Howard, and had a conversation with her in which they discussed a payment schedule. Petitioner said he was not going to pay the battered women's shelter donation. The [j]udicial [a]ssistant then went back to the courtroom, followed by [p]etitioner. He stood in the audience section of the courtroom while she approached sidebar. Judge Iles was dealing with another case. The [j]udicial [a]ssistant slammed the Wagner case file down on the sidebar and told Judge Iles [p]etitioner was not cooperating with her, and that she could not, therefore, work with him. Judge Iles told the [p]etitioner that since he was not willing to cooperate with the [j]udicial [a]ssistant he would be taken into custody. She instructed her bailiff, Richard Avila, to take him into custody.

"Richard Avila handcuffed the [p]etitioner and placed him in the in-custody box inside the courtroom. Petitioner kept trying to turn and talk to the judge. He asked Avila why he was going into custody, and Avila gave him his uniform answer: 'I don't know. I just do as I'm told.' As [p]etitioner continued to question why he was in custody, the judge told him he was in violation of his probation. She ordered Avila to take him down, which meant he was to be removed from the courtroom to a cell in another part of the courthouse. This was done.

"At about the time [p]etitioner was taken into custody the judge ordered that the Public Defender be appointed to represent him. The Public Defender who was working in the [d]omestic [v]iolence court that day, Stephen Daniels, was not physically in court at the time of [p]etitioner's arrest, and learned of his appointment after the [p]etitioner was in custody. Petitioner was returned to the courtroom about three hours after he was taken out. At that time Mr. Daniels had an opportunity to speak to him. At some point in time an arraignment date for a probation violation hearing was set for

1/16/03. Mr. Daniels did not object to that date, and does not recall when in the process a date was set. He did not speak to the judge regarding the time of arraignment.

". . . The court did not explain to [p]etitioner why his probation was being revoked on 12/18/02. The judge told [p]etitioner he was going into custody because he was not cooperating with Ms. Howard. She later told him he was in custody for a probation violation."

After these events, petitioner or his family arranged for him to be represented by his present lawyer, Steven H. Hertz. On December 20, 2002, and again on December 23, the court conducted in-chambers hearings. During the first of these hearings Daniels, the public defender, and Hertz were present with the judge. Hertz was the only one present with the judge during the December 23 hearing. There was no representative from the Office of the District Attorney, nor was the court clerk present during either hearing. At the December 20 hearing Hertz substituted in as petitioner's lawyer; at that time he requested that petitioner be released but Judge Iles told him he was being held at "no bail." During the December 23 hearing, Hertz provided Judge Iles "with a letter from [p]etitioner's physician . . . speaking of his use of prescription drugs and mentioning the possibility of surgery in the near future. No action was taken at that time." Thereafter Hertz filed this petition for writ of habeas corpus on behalf of petitioner.

## DISCUSSION

*The facts asserted by the court in support of petitioner's arrest are not supported by the findings.*

The trial court properly issued a warrant for petitioner's arrest when he failed to appear on December 16, 2004. (Pen. Code, § 1203.2, subd. (a).) And this disobedience of the court's order provided a basis for the probation revocation.

But the additional ground stated in Judge Iles return to the petition, failure "to provide proof of enrollment in the HCA program or, alternatively, to provide a letter from his physician explaining why Wagner was continuing to be prescribed narcotic drugs for the treatment of carpal tunnel syndrome" is not supported by the findings. The original terms of probation ordered petitioner to make contact with the health care agency for an assessment. There is no evidence he failed to do so.

Subsequently, on November 26, petitioner was ordered to attend and successfully complete a substance abuse program and present proof of his enrollment. Judge Randall found that "[p]etitioner was ineligible to participate in the program so long as he was taking prescription addictive drugs." It is likely that the court wished to satisfy itself that petitioner's taking of these drugs was truly necessary for his medical condition and would have wanted to receive a letter from the treating physician. But there is nothing in the findings or the record to indicate that the court ever instructed petitioner to obtain such a document until the hearing on December 18, 2002, when, before he was referred to the judicial assistant, he was told to present such a letter on January 8, 2003.

The report the court received from Dellefield on December 13, 2002, contained a recommendation that petitioner be ordered to provide "convincing proof that doctors believe he must take the medication in question until he has surgery . . . ." (Underscoring omitted.) But there is nothing in the record that petitioner was provided with a copy of this report. And, even if he had been given a copy, the recommendation from Dellefield would not be the equivalent of a court order or a further condition of probation.

Furthermore, the findings indicate that neither petitioner's failure to appear two days earlier nor his failure to provide a letter from his physician was the basis for his being taken into custody. The warrant issued when he did not appear on December 16, 2002, was recalled when he came to court on December 18. Judge Randall found that after "[t]he [j]udicial [a]ssistant slammed the Wagner case file down on the sidebar and told Judge Iles [p]etitioner was not cooperating with her, . . . Judge Iles told the [p]etitioner that since he was not willing to cooperate with the [j]udicial [a]ssistant he would be taken into custody." This was after a private conversation between Judge Iles and her assistant. Even if "contempt of judicial assistant" were a crime, the perpetrator of such contempt would be entitled to a hearing (Code Civ. Proc., § 1217) and bail (Code Civ. Proc., § 1215).

*Petitioner was entitled to due process.*

■ Placing petitioner in jail, denying him bail, and scheduling a hearing a month hence constituted a de facto revocation of his probation without satisfying any of the due process requirements demanded upon such revocation. Penal Code section 1203.2, subdivision (b) empowers the court to revoke probation on its own motion. But the section requires that the court give notice of its motion to probationers and their attorneys of record. There is no evidence that the public defender who represented petitioner at the time of his plea withdrew or was discharged. No notice was given either to petitioner or to his lawyer.

■ Penal Code section 1203.2, subdivision (b) also requires such notice be given to the district attorney where there is no probation officer. No such notice was given. (Judge Randall's findings stated that "it is the unwritten policy of the Orange County District Attorney's office not to attend hearings in misdemeanor matters unless an evidentiary hearing is required"; we question whether such an unwritten policy permits the court to ignore the statutory requirement.)

■ "[A] probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer* [(1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]]." (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782 [36 L.Ed.2d 656, 93 S.Ct. 1756].) These conditions include that probationers be advised of their right to a formal hearing on the alleged probation violations (*Morrissey v. Brewer, supra,* 408 U.S. at p. 488; *People v. Vickers* (1972) 8 Cal.3d 451, 457 [105 Cal.Rptr. 305, 503 P.2d 1313]), of their right to counsel (*People v. Vickers, supra,* 8 Cal.3d at p. 461), their right to present evidence (*Morrissey v. Brewer, supra,* 408 U.S. at p. 489), their right to confront and cross-examine witnesses (*People v. Vickers, supra,* 8 Cal.3d at p. 457), and their right to disclosure of the evidence to be presented against them (*ibid.*). Unless waived, probationers are also entitled to receive a written statement of the reasons for and evidence supporting the revocation of probation. (*Ibid.*)

According to Judge Randall's findings, all the court did was tell petitioner he would be taken into custody because he was not willing to cooperate with the judicial assistant and, when he inquired why he was taken into custody, she merely replied that he was in violation of his probation. This did not satisfy the court's duty to afford due process to petitioner.

*The court should not have personally selected the charity to which petitioner was ordered to make a contribution.*

One of the conditions of probation imposed by Judge Iles was that petitioner "pay $1000 to Laura's House, a battered women's shelter." According to Judge Randall's findings, the conflict between petitioner and Judge Iles's judicial assistant resulted from petitioner's statement to her that he was not going to pay that donation. In her return, Judge Iles stated that she "had the authority to order the payment pursuant to Penal Code section[]1203.097, [subdivision] (a)(11)(A). The payment to the shelter is to an organization reasonably related to [petitioner's] pled offense." (Italics omitted.)

 Penal Code section 1203.097 requires certain conditions be imposed when a person guilty of domestic violence is granted probation. Instead of a fine, the court may order "[t]hat the defendant make payments to a battered women's shelter, up to a maximum of five thousand dollars ($5,000)." (Pen. Code, § 1203.097, subd. (a)(11)(A).) The statute is silent as to who is entitled to designate the recipient of this payment. But an interpretation that would permit each trial judge to designate his or her favorite shelter runs afoul of provisions of the California Code of Judicial Ethics. Canon 2B(2) provides that "[a] judge shall not lend the prestige of judicial office to advance the pecuniary or personal interests of . . . others." And canon 4C(3)(d)(iv) provides that a judge "shall not permit the use of the prestige of his or her judicial office for fund raising . . . ."

In the face of these prohibitions, courts must devise means to implement Penal Code section 1203.097, subdivision (a)(11)(A) in such a manner as to remove the responsibility for designating specific charities from the individual judge imposing probation. Without limiting the means by which this may be accomplished, one such method would be to have the funds paid to a court-administered domestic violence fund and have a committee of judges, not directly involved in sentencing persons guilty of domestic violence, determine how these funds should be distributed within the framework of section 1203.097, subdivision (a)(11)(A). Undoubtedly other means may be devised to permit implementation of the scheme of the subdivision that do not run afoul of the prohibition on judges engaging in fundraising activities on behalf of particular charities.

*Judge Iles's personal embroilment in the case warrants a transfer to another judge.*

We may infer from Judge Randall's findings that Judge Iles's precipitous order remanding petitioner to custody, without affording him an opportunity to respond to the charges made by the judicial assistant, was motivated by anger aroused when the judicial assistant "slammed the Wagner case file down on the sidebar and told Judge Iles [p]etitioner was not cooperating with her . . . ." It also appears Judge Iles may have relied on a report from the substance abuse program which was not shared with petitioner, the district attorney, or the previously appointed public defender.

 The district attorney's declination "to become involved in this imbroglio" or to take a position on whether or not petitioner's probation was properly revoked compels us to take a closer look at a judge who appears to have combined the functions of probation officer, prosecutor, judge, and

executor of the sentence. And Judge Iles's decision to file a return in these proceedings contradicts her function as a dispassionate fact finder. Except where the issues involve the trial court's procedures rather than the litigation in which the issues arise, it is inappropriate for trial judges to make their voices heard in the appellate process. (*Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1016, 1018 [61 Cal.Rptr.2d 49], disapproved on another ground in *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1069, fn. 6 [103 Cal.Rptr.2d 751, 16 P.3d 166].) By filing the return, Judge Iles indicates that she believes she has a personal stake in this matter. She is not allowed to have such an interest.

As we recently noted, "[t]he superior court and the others involved in the efforts to establish dedicated domestic violence courts within the Orange County trial court system are to be commended. We recognize domestic violence courts in many instances better assist victims, increase accountability of batterers, and advance the administration of justice in countless other ways, but judicial officers handling domestic violence cases must conform their conduct to the law. This record suggests that, despite the best of intentions, a judicial officer can become so embroiled in the cause of domestic violence and can develop such a sense of ownership that an appearance of impropriety is created." (*Hemingway v. Superior Court* (2004) 122 Cal.App.4th 1148, 1158 [19 Cal.Rptr.3d 363].)

■ "Code of Civil Procedure section 170.1, subdivision (a)(6) provides the standard by which we are to determine whether the trial judge is to be disqualified: '. . . a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.' We need not determine whether there is actual bias." (*Ng v. Superior Court, supra,* 52 Cal.App.4th at p. 1024.) The circumstances here lead us to conclude that in the interest of justice, and if petitioner so requests, further proceedings herein be heard before a trial judge other than Judge Iles. (Code Civ. Proc., § 170.1, subd. (c).)

## DISPOSITION

Let a writ of habeas corpus issue directing the trial court to vacate its order determining that petitioner violated a condition of his probation and placing petitioner in custody. The writ shall further direct that, upon request by

petitioner, the Presiding Judge of the Orange County Superior Court assign another judge to determine whether grounds exist supporting a finding that petitioner violated the conditions of his probation and conduct further proceedings in a manner provided by law. This court's stay order is dissolved.

Moore, J., and Fybel, J., concurred.

A petition for a rehearing was denied March 18, 2005.