[No. B218800. Second Dist., Div. Four. Jan. 4, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JORDY EZEQUIEL OCHOA, Defendant and Appellant.

**COUNSEL**

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Michael A. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MANELLA, J.**—In the underlying action, appellant Jordy Ezequiel Ochoa was charged with possession of a firearm as a felon (Pen. Code, § 12021, subd. (a)(1)).[1] Prior to his trial, he sought discovery under *Pitchess v. Superior*

---

[1] All further statutory citations are to the Penal Code.

*Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*). After the jury in appellant's first trial was unable to reach a verdict on the charge, the trial court declined to revoke appellant's probation, and appellant was convicted of the charge after a second trial. Appellant contends that under the doctrine of collateral estoppel, the ruling on his probation barred the second trial; in addition, he requests this court independently review the in camera proceeding conducted pursuant to *Pitchess*, to determine whether the trial court improperly denied disclosure of discoverable information. We reject the contention regarding the application of collateral estoppel, and following a review of the in camera proceeding, find no error under *Pitchess*. We therefore affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In October 2007, appellant suffered a felony conviction for resisting an executive officer (§ 69), and was placed on formal probation for 36 months (Super. Ct. L.A. County, No. BA326153). After appellant's arrest on December 4, 2008, he was charged with possession of a firearm as a felon. Prior to trial on the charge, appellant filed a *Pitchess* motion, seeking discoverable material regarding the Los Angeles Police Department (LAPD) officers who participated in the arrest, including Officers Lazaro Ortega and Jeff Castillo. After an in camera hearing, the trial court permitted discovery of only some information.

At appellant's first trial, Officer Ortega testified that he and his partner, Officer Castillo, were driving in a patrol car when they saw appellant standing near a female. After the officers stopped the car and approached appellant on foot, appellant removed a black gun from his waistband and tossed it into the female's purse. Appellant then ran into a nearby apartment, where he was arrested. Ortega found a gun in the female's purse.[2] Appellant's witnesses—who included his mother, his girlfriend, her mother and a neighbor—testified that on the date of the arrest, appellant took his child to buy ice cream, and then returned with the child to his girlfriend's apartment. Later, police officers found a gun in a woman's purse outside the apartment, and arrested appellant.

On June 26, 2009, after the jury was unable to reach a verdict, the trial court declared a mistrial and, with the agreement of the parties, conducted a probation revocation hearing on the basis of the evidence presented at trial. Neither the prosecution nor appellant submitted additional evidence. Noting

---

[2] The parties stipulated that appellant had suffered a felony conviction prior to his arrest.

the absence of appellant's fingerprints and DNA on the gun, the court concluded that the prosecution failed to show a probation violation.[3]

Appellant's second trial began on August 21, 2009. On August 26, 2009, following the presentation of evidence, the jury found appellant guilty of possessing a firearm as a felon.[4] The trial court ordered that appellant serve 365 days in county jail, awarded him a total of 393 days of custody credits, suspended the imposition of sentence, and placed appellant on three years of formal probation.

## DISCUSSION

Appellant contends that the doctrine of collateral estoppel barred his second trial; in addition, he requests this court to independently review the in camera *Pitchess* hearing.

### A. *Collateral Estoppel*

Appellant maintains that the trial court's ruling at the probation revocation hearing collaterally estopped his second trial.[5] As explained below, this contention fails under the public policy exception to the doctrine of collateral estoppel, as elaborated in *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343 [272 Cal.Rptr. 767, 795 P.2d 1223] (*Lucido*).

#### 1. *Governing Principles*

Collateral estoppel ordinarily bars the relitigation of an issue decided at a previous proceeding when the following threshold requirements are satisfied: "1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; and 5) the party against whom

---

[3] A prosecution DNA expert testified that the gun, when tested, displayed no trace of appellant's DNA. The parties stipulated that appellant's fingerprints were not discovered on the gun.

[4] With the exception of Ruben Castellanos, the prosecution's rebuttal witness at the first trial, the same witnesses testified at the second trial. During the first trial, Castellanos, a Los Angeles County investigator, testified regarding his interviews with certain defense witnesses; during the second trial, excerpts from Castellanos's interview reports were admitted in lieu of his testimony.

[5] Although appellant characterizes his contention as one of double jeopardy, he presents no argument that his second trial contravened the jeopardy clause of the federal or state Constitution, insofar as they implicate principles other than the doctrine of collateral estoppel. He has thus forfeited any such contention.

preclusion is sought must be in privity with the party to the former proceeding." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1077 [48 Cal.Rptr.3d 75, 141 P.3d 197] (*Garcia*).) Nonetheless, because collateral estoppel is ultimately subject to considerations of public policy, the doctrine's application is not automatic. (*Lucido, supra,* 51 Cal.3d at pp. 342–343.) As our Supreme Court explained in *Lucido,* "the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Id.* at p. 343.)

*Lucido* is the leading case on the collateral estoppel effects of decisions in probation revocation proceedings, which differ from criminal prosecutions (*People v. Clark* (1996) 51 Cal.App.4th 575, 581–582 [59 Cal.Rptr.2d 234], disapproved on another ground in *People v. Mendez* (1999) 19 Cal.4th 1084, 1098 [81 Cal.Rptr.2d 301, 969 P.2d 146]).[6] In *Lucido,* the defendant was charged with indecent exposure. (*Lucido, supra,* 51 Cal.3d at p. 339.) At a probation revocation hearing prior to the trial of the offense, the court found that the prosecution had failed to prove a probation violation based on the offense. (*Ibid.*) After the court declined to dismiss the charges on the ground of collateral estoppel, the defendant sought relief by writ petition. (*Id.* at p. 341.) The Supreme Court held that the decision at the revocation hearing did not bar the trial, reasoning that although the threshold requirements for collateral estoppel were "arguably" satisfied, public policy precluded the doctrine's application. (*Id.* at pp. 341–343, 347–351.)

In assessing the first category of public policy, namely, the integrity of the judicial system, the court concluded that permitting a revocation hearing to displace a criminal trial as the principal forum for determining criminal culpability would erode public confidence in the judicial system. (*Lucido, supra,* 51 Cal.3d at p. 347.) The court noted that confidence in the judicial

---

[6] Section 1203.2, which governs the revocation of probation, specifies few guidelines for such proceedings. (*People v. Arreola* (1994) 7 Cal.4th 1144, 1152 [31 Cal.Rptr.2d 631, 875 P.2d 736].) Generally, "constitutional principles permit the revocation of probation when the facts supporting it are proven by a preponderance of the evidence." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441 [272 Cal.Rptr. 613, 795 P.2d 783].) Furthermore, under the procedural safeguards required by the federal Constitution, " '[a] probationer . . . is entitled to a preliminary and a final revocation hearing [that meet certain conditions].' [Citation.] These conditions include that probationers be advised of their right to a formal hearing on the alleged probation violations [citations], of their right to counsel [citation], their right to present evidence [citation], their right to confront and cross-examine witnesses [citation], and their right to disclosure of the evidence to be presented against them [citation]. Unless waived, probationers are also entitled to receive a written statement of the reasons for and evidence supporting the revocation of probation. [Citation.]" (*In re Wagner* (2005) 127 Cal.App.4th 138, 146 [25 Cal.Rptr.3d 201].)

system may be undermined when two tribunals render different verdicts, but reasoned that differences in the determinations at a revocation hearing and a trial would not have this effect, as the two proceedings serve different interests and purposes. (*Id.* at pp. 347, 350.) The court observed that "a criminal prosecution seeks conviction for wholly new offenses," whereas "[a] revocation hearing arises as a continuing consequence of the probationer's original conviction . . . ." (*Id.* at p. 348.) As a result, the trial court's fundamental role at a revocation hearing "is not to determine whether the probationer is guilty or innocent of a crime, but whether a violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain his conditional liberty." (*Ibid.*) In addition, because "the limited nature of this inquiry" may inhibit the prosecution from presenting a full evidentiary showing at a revocation hearing, the prosecution's failure to satisfy the lower burden of proof at the hearing "does not necessarily amount to an acquittal." (*Ibid.*)

■ The Supreme Court concluded: "Given these distinctions between the revocation hearing and a criminal trial, application of collateral estoppel would not serve the public interest in holding probationers accountable for *both* violation of the terms of their probation and commission of newly alleged crimes. [Citation.] Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes. [Citations.]" (*Lucido, supra*, 51 Cal.3d at pp. 348–349, fn. omitted.)

■ Turning to the remaining categories of public policy, the court concluded that concerns about judicial economy and vexatious litigation did not favor the application of collateral estoppel to revocation decisions. The court determined that the importance of preserving the criminal trial process as the "exclusive forum" for litigating new criminal offenses outweighed the efficiencies gained by applying the doctrine. (*Lucido, supra*, 51 Cal.3d at pp. 350–351.) Furthermore, the court concluded that rejecting the doctrine's application would not promote vexatious or unfair litigation: "The essence of vexatiousness . . . is not mere repetition. Rather, it is harassment through baseless or unjustified litigation. [Citation.] Petitioner does not assert that the criminal proceedings in this case are intended to harass. The public has a legitimate expectation that a person once found guilty of a crime may both be held to the terms of his probation and . . . tried anew for any offenses alleged to have been committed during the probationary period." (*Id.* at p. 351.) In addition, the court noted that a probationer's testimony at a revocation hearing is inadmissible at a subsequent trial. (*Ibid.*) The court thus held that the decision at the probationer's revocation hearing did not collaterally estop his second trial. (*Ibid.*)

In so concluding, the Supreme Court distinguished its prior decision in *People v. Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321] (*Sims*), which addressed the application of the collateral estoppel doctrine to decisions in administrative hearings before the State Department of Social Services (DSS). In *Sims*, a welfare recipient was exonerated of fraud charges in a DSS administrative hearing. (*Id.* at pp. 472–474.) Relying on the doctrine of collateral estoppel, the welfare recipient obtained the dismissal of criminal charges against her predicated on the same allegations of welfare fraud. (*Id.* at p. 474.) Observing that the DSS proceeding amounted to a "judicial-like adversary proceeding," the *Sims* court affirmed the dismissal, reasoning, inter alia, that permitting the criminal prosecution worked a hardship on the welfare recipient, who was required to present a defense to the fraud charges with "limited resources." (*Id.* at pp. 479, 488–489.)

The court in *Lucido* explained that *Sims* presented a situation in which "compelling public policy considerations outweighed the need for determinations of guilt and innocence to be made in the usual criminal trial setting." (*Lucido, supra*, 51 Cal.3d at p. 349.) The *Lucido* court noted in particular that the statutory scheme governing the DSS hearings disclosed a legislative preference that allegations of welfare fraud be resolved through the DSS administrative process. (*Id.* at pp. 349–350.) In contrast, the Legislature had indicated no preference "that questions of guilt or innocence on criminal charges be litigated in revocation hearings rather than at trial."[7] (51 Cal.3d at p. 350.)

In *Garcia, supra*, 39 Cal.4th 1070, the Supreme Court revisited *Lucido* and *Sims*, and reaffirmed that DSS hearings, unlike probation revocation hearings, may properly displace "the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes" (*Lucido, supra*, 51 Cal.3d at p. 349). There, a welfare recipient was exonerated of welfare fraud charges at a DSS hearing, but failed to obtain a dismissal of a related criminal action against her, and was convicted of fraud. (*Garcia, supra*, 39 Cal.4th at pp. 1075–1076.) Relying on *Sims*, the Supreme Court held that the conviction must be reversed. (*Id.* at pp. 1076–1083.)

▮ In reaching this conclusion, the Supreme Court rejected the contention that *Sims* should be overruled because amendments to the DSS statutory scheme had erased the legislative preference that welfare fraud allegations be

---

[7] On this matter, the Supreme Court observed: "The juxtaposition of the revocation hearing and a criminal trial is similar to that between a preliminary hearing and a subsequent trial. As here, the [prosecution's] burden at the preliminary hearing is lower than that at the trial sought to be precluded. Nonetheless, the Legislature has provided that dismissal at the preliminary hearing does not bar the [prosecution] from refiling the complaint for the same criminal charge. (See § 991, subd. (e).)" (*Lucido, supra*, 51 Cal.3d at p. 349.)

resolved in DSS proceedings. (*Garcia, supra*, 39 Cal.4th at pp. 1076–1083.) Notwithstanding the amendments, the court identified other factors justifying the distinction between DSS proceedings and revocation hearings, for purposes of collateral estoppel. (*Id.* at pp. 1085–1087.) Noting the discussion in *Lucido* regarding the integrity of the judicial system, the court explained that DSS proceedings and revocation hearings serve different interests and purposes: DSS proceedings, like criminal trials, provide forums for the determination of culpability regarding new offenses, but revocation hearings do not. (*Id.* at pp. 1086–1087.) On this matter, the court remarked: "In essence, the issue at a probation revocation hearing is whether the defendant's conduct demonstrates that the leniency extended by the grant of probation remains justified. By contrast, . . . 'a criminal prosecution seeks conviction for wholly new offenses.' " (*Id.* at p. 1087, quoting *Lucido, supra*, 51 Cal.3d at p. 348.)

The *Garcia* court also distinguished DSS proceedings from revocation hearings on two points related to the policy concern regarding vexatious litigation. (*Garcia, supra*, 39 Cal.4th at pp. 1085–1086.) First, forcing welfare recipients to respond to criminal charges after successfully defending fraud allegations in DSS proceedings would impose a hardship on them; in contrast, no such hardship attaches to a criminal trial following a revocation hearing. (*Id.* at pp. 1085–1086.) Second, a probationer's testimony at a revocation hearing is inadmissible at a subsequent trial, whereas welfare recipients enjoy no such protection regarding their testimony at DSS proceedings. (*Id.* at p. 1086.)

## 2. *Analysis*

█ We turn to the issue presented here, namely, whether the trial court's decision at the probation revocation hearing barred appellant's second trial because the decision was based on the evidence presented at his first trial. As in *Lucido*, the resolution of this issue does not hinge on the threshold requirements for collateral estoppel: the record before us establishes that they are satisfied. Rather, the question before us is whether the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—favor the application of the doctrine in the circumstances before us. For the reasons explained below, we conclude they do not.

█ We begin with the policy consideration regarding the integrity of the judicial system. At the outset, we note that the first trial, viewed in isolation, does not challenge the integrity of the judicial system, as it ended in a mistrial and thus resulted in no determination. It is well established that "[w]here a jury fails to agree on a verdict it is the same 'as if there had been

no trial on that issue . . .' " and "[t]he case may be reset for trial." (*Brown v. Municipal Court* (1978) 84 Cal.App.3d 180, 182–183 [148 Cal.Rptr. 493], quoting *People v. Messerly* (1941) 46 Cal.App.2d 718, 721 [116 P.2d 781].)

The question before us, therefore, is whether the interposition of the revocation hearing between the first and second trials removes the present case from the scope of *Lucido*. Precisely put, the key issue is whether the distinction between revocation hearings and trials drawn in *Lucido* was nullified by the trial court's decision to base its revocation ruling on the evidence admitted at the first trial. Appellant contends that the decision extinguished this distinction, pointing to the *Lucido* court's remark that the procedural differences between revocation hearings and trials may invite the prosecution to make a limited evidentiary showing at a revocation hearing. Appellant argues that the trial court's decision eliminated this possibility; in addition, he maintains that because the revocation hearing incorporated the evidence presented at the first trial, the hearing was indistinguishable from a criminal trial on his culpability.

■ We do not read *Lucido* so narrowly. As explained above (see pt. A.1., *ante*), the critical distinction drawn in *Lucido*—and again in *Garcia*—resides in the disparate purposes and interests served by revocation hearings and criminal trials, rather than in their procedural differences. As stated in *Lucido*, "the criminal trial process" is "the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes." (*Lucido, supra*, 51 Cal.3d at p. 349; see *Garcia, supra*, 39 Cal.4th at pp. 1086–1087.) In contrast, the purpose of a revocation hearing is to determine whether "the leniency extended by the grant of probation remains justified . . . ." (*Garcia*, at p. 1087; see *Lucido, supra*, 51 Cal.3d at pp. 348–349.) As revocation hearings and trials serve different purposes and interests, a ruling at a revocation hearing, though inconsistent with the verdict at trial, does not erode public confidence in the judicial system. (*Lucido*, at pp. 347–349; *Garcia*, at pp. 1086–1087.) In drawing this critical distinction, the Supreme Court never suggested that a revocation hearing may displace a trial if it is conducted in a trial-like manner, and never attributed dispositive weight to the quantum of evidence admitted at a revocation hearing. Indeed, in *Lucido*, the limited appellate record before the Supreme Court lacked even a transcript of the revocation hearing (*Lucido*, at p. 340). Although appellant's revocation hearing was procedurally akin to a trial, we abide by our Supreme Court's pronouncements in *Lucido* and *Garcia* attributing decisive significance to the disparate purposes and interests served by revocation hearings and trials.

We next consider the question of judicial economy. Appellant maintains that applying collateral estoppel to the revocation ruling would promote

judicial economy. In *Lucido*, the court rejected the analogous contention, reasoning that "the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence as to new crimes" outweighed any potential efficiencies. (*Lucido, supra*, 51 Cal.3d at p. 351.) As this consideration retains its importance in the present case, we reach the same conclusion.

■ Finally, we reject appellant's contention that "subjecting a defendant to two full criminal trials" was "definitively vexatious." As explained above, absent the revocation hearing, the prosecutor was entitled to set a second trial when the first trial ended with a hung jury. Nor did the occurrence of the revocation hearing render the second trial vexatious. Nothing before us suggests that the prosecution intended to harass appellant by conducting the second trial after the revocation hearing. Moreover, as explained in *Lucido* and *Garcia*, "it is neither vexatious nor unfair for a probationer to be subjected to both a revocation hearing and a criminal trial." (*Lucido, supra*, 51 Cal.3d at p. 351; accord, *Garcia, supra*, 39 Cal.4th at p. 1086.) In sum, the decision at the revocation hearing did not bar appellant's second trial.[8]

## B.   Pitchess *Motion*

Appellant requests that we independently review the in camera hearing at which the trial court granted his *Pitchess* motion in part and denied it in part. The motion requested the disclosure of discoverable material within the personnel records of Officers Ortega and Castillo, as well as two other LAPD officers who participated in appellant's arrest.[9] According to the supporting attorney declaration, appellant asserted that the officers had fabricated the firearm possession charge in retaliation for a prior complaint he had lodged against them. The trial court granted the motion solely with respect to Officers Ortega and Castillo, limited to information relevant to the planting of evidence, fabrication, and perjury by Ortega, and fabrication by Castillo. Following the in camera review, the court concluded there was a single discoverable record, namely, a complaint filed by appellant's former private attorney, who had alleged that Ortega falsified his report after arresting appellant on December 4, 2008.

---

[8] In view of this conclusion, we reject appellant's contention that his counsel rendered ineffective assistance by failing to object to the second trial on the basis of collateral estoppel. Defense counsel does not render ineffective assistance by declining to raise meritless objections. (*People v. Price* (1991) 1 Cal.4th 324, 387 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

[9] Appellant sought "[a]ll complaints . . . relating to acts involving the violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure[,] false arrest, perjury, dishonesty, writing of false police reports, planting of evidence, false or misleading internal reports, including, but not limited to, false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude . . . ."

We review this determination for abuse of discretion.[10] (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220–1221 [56 Cal.Rptr.2d 49, 920 P.2d 1254].) We have independently examined the materials the trial court scrutinized (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229 [114 Cal.Rptr.2d 482, 36 P.3d 21]), and conclude there is no basis to disturb its ruling on the *Pitchess* motion.

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and Willhite, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 20, 2011, S190669.

---

[10] Appellant does not challenge the scope of the in camera hearing.