Filed 7/15/21  P. v. Banks CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075867 |
| v. | (Super.Ct.No. CR40838) |
| PRENTISS ALBERT BANKS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.
Affirmed.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant
and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant
Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and
Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal concerns the trial court's denial of a Penal Code section 1170.95
petition for resentencing.  In 1992, defendant and appellant Prentiss Albert Banks was

1

sentenced to life without the possibility of parole for a special circumstance murder, namely, a murder committed during a robbery. The murder conviction was based on a felony murder theory, and the jury deadlocked on an allegation that Banks personally used a firearm during the robbery, which on his facts would have also suggested he was the actual killer. We affirmed the conviction in an unpublished opinion. (*People v. Banks* (Jun. 13, 1994), E012131 [nonpub. opn.].) In 2019, Banks filed a petition for resentencing, which was denied.

On appeal, Banks argues that the trial court applied an incorrect standard in ruling on his petition, and that it erroneously relied on the appellate opinion in finding him ineligible for relief. Although the trial court applied an incorrect standard, it was proper for the trial court to rely on our previous opinion, which demonstrates that Banks is ineligible for relief. Banks's petition is premised on his argument that he was not the actual killer and was merely an aider and abettor in the robbery. But our earlier opinion held that the failure to instruct the jury on findings required for the special circumstance allegation if Banks was not the killer was harmless beyond a reasonable doubt. Thus the opinion held that the jury must have convicted Banks on a theory that he was the actual killer. As we explain, this means he cannot show that he could not be convicted of murder today "because of" changes in the law. It is readily ascertainable from Banks's record of conviction that he was actually convicted on a murder theory that is still

2

available after the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437). Accordingly, we affirm.[1]

## I. BACKGROUND

### A. *Factual History of the Underlying Crimes*

We restate the statement of facts from Banks's previous appeal:

"<u>Counts I Through III.</u> Ernestina Moreno, Marcy Alamilla, Manuel Cabrera, and Hector Ortiz were sitting in a parked car in Fairmount Park in Riverside in the evening of February 11, 1991. A tall, thin Black man approached the passenger side of the car, pointed a rifle at Ortiz, and ordered them to get out of the car. Ortiz pushed the rifle barrel out of the car and said, 'No.' The man pushed the rifle back in and shot Ortiz. The man then went to the driver's side and told Moreno to get out. She and her companions got out and ran away. Moreno could not identify her assailant. Alamilla left her purse in the car. Several other people joined the gunman; they got into the car and drove away.

"Ortiz died the next morning from the gunshot wound to his abdomen.

"<u>Count IV.</u> Early in the morning of February 12, 1991, Thomas Vega was driving his truck when a car, later identified as the car taken from Moreno, came up rapidly from behind and bumped his truck. Vega got out to exchange information. Banks approached with a rifle, pointed it at Vega, and ordered him to get on his knees on the ground and hand over his wallet. Vega complied. Banks and three companions who had been in

---

[1] Undesignated statutory references are to the Penal Code.

3

Moreno's car ran to Vega's truck, jumped in, and drove away. Police later found Moreno's car nearby in a ditch.

"Officer Donald Crabtree saw Vega's truck speeding and began pursuit after the truck ran a red light. The truck collided with a parked car, and three men got out of the truck and ran away. Crabtree found a beanie, a bullet, a packaged Lifestyle condom, and a rifle in the back of the truck. None of those objects had been in the truck when it was stolen from Vega.

"About an hour later, Officer Stephen Davis saw Banks crouched down using a pay telephone at a gas station in the area. Davis approached and asked Banks what he was doing. Banks replied that his car had broken down on the freeway, and he was calling his mother. Davis detained Banks.

"Within an hour or so, Vega was brought to the scene for a showup. Vega identified Banks, who was then arrested. Banks had on his person seven packaged Lifestyle condoms. There had been a number of Lifestyle condoms in Moreno's car when it was stolen.

"That evening, Banks was questioned by Riverside police detectives. He first claimed that a companion had wielded the gun in each incident. He then admitted he was the gunman in the Vega incident. Finally, he admitted he had shot Ortiz. He claimed he 'didn't mean for the gun to go off.' But 'when [Ortiz] grabbed it he pulled it, my finger was on the trigger, . . . and it went off.' Tapes of the interviews were played for the jury.

4

"<u>Defense.</u>  Banks testified in his own behalf.  He claimed that the evening before the carjackings, he had been riding around with some friends.  They started talking about doing a carjacking.  He did not want to participate, so they let him out of the car.  A few hours later, the friends picked him up in Moreno's car, which they said they had taken.  Banks got the condoms from that car.

"They drove up behind Vega's truck, decided to take it, and rammed it from behind.  Herman Davis said, "'I did the last one. . . . Somebody else do this one.  I'm not doing another one.'"  Everyone looked at Banks, so he took the rifle and robbed Vega.

"He admitted he had changed his story during the police questioning.  He told the officers he had shot Ortiz because it was what the officers wanted to hear, even though he was not even present during the incident.

"<u>Rebuttal.</u>  Detective Kensinger testified he never told Banks it would go easier on him if he told the officers what they wanted to hear."

## B.  *Banks's Trial and Appeal*

Banks was charged (along with two codefendants) with murdering Ortiz (§ 187; count 1) and robbing Moreno, Alamilla, and Vega (§ 211; counts 2, 3, and 4).  For all four counts, Banks was alleged to have personally used a firearm (§ 12022.5).  Count 1 also included a special circumstance allegation that Banks and the other defendants murdered Ortiz in the commission of a robbery (§ 190.2, subd. (a)(17)(i)).[2]

---

[2]  The defendants were tried separately.

5

The instructions given to the jury indicate that the murder count was predicated on only a felony murder theory; for example, the jury was instructed that a required element of the murder was that the killing occurred during the commission or attempted commission of a robbery. (See § 189, subd. (a) [felony murder is murder "committed in the perpetration of, or attempt to perpetrate," robbery and other specified felonies].)

The jury found Banks guilty on all four counts. It found the firearm allegation true only on count 4, Vega's robbery. As to count 1, the jury deadlocked 11 to 1 on the firearm allegation. It found the special circumstance allegation true.

On appeal, Banks contended that his taped confession was erroneously admitted, that he should not have been shackled in the courtroom, and that the special circumstance finding needed to be reversed. This court also "deem[ed]" Banks to have challenged the constitutionality of a jury instruction on reasonable doubt. We affirmed the judgment in full.

With regard to the challenge to the special circumstance finding, Banks noted that although he was alleged to have personally used a firearm in the robbery, the jury did not find the allegation true. On that basis he argued that the jury may have believed he was not the actual killer. Additionally, he argued that because the jury was never instructed what findings it must make for the special circumstance finding to apply to someone other than the actual killer, the finding could not be upheld.

We agreed with Banks that "the trial court erred in failing to instruct the jury on general principles of liability for special circumstances." However, we found the failure

6

to give the instruction harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18.[3]

We stated: "By finding Banks guilty of robbery and felony murder in counts I through III, the jury obviously rejected Banks' trial testimony in which he repudiated his prior confession and stated he had not even been present during the robbery and shooting. After rejecting Banks' trial testimony, the jury was then left with two versions of the events: Banks' initial statement to the police that he had been present as an onlooker and his tearful confession to having been the gunman. At trial, Banks tried to explain away his confession by saying he had merely told the police what he thought they wanted to hear, and he had given way to their deceptive statements and psychological coercion.

---

[3] We included the specific instruction that should have been given, CALJIC No. 8.80.1, as a footnote. In relevant part, the instruction states: "If you find [the] [a] defendant in this case guilty of murder of the first degree, you must then determine if [one or more of] the following special circumstance[s]: [is] [are] true or not true . . . .

"The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.

"[Unless an intent to kill is an element of a special circumstance, if] [If] you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true.]

"[If you find that a defendant was not the actual killer of a human being, [or if you are unable to decide whether the defendant was the actually killer or [an aider and abettor] [or] [co-conspirator],], you cannot find the special circumstance to be true [as to that defendant] unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] any actor in the commission of the murder in the first degree] [.] [, or with reckless indifference to human life and as a major participant, [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] in the commission of the crime of ___ which resulted in the death of a human being, namely ___."

7

This position simply was not credible. As discussed above, we found no improprieties on the part of the police in conducting the interviews."

We added: "We put no stock in Banks' position that because there was at least one holdout juror on the personal firearm use allegation, the instructional error could not have been harmless. The questions of the jurors during deliberations indicate confusion about whether they could find the gun use allegation true without corroboration from another witness. The fact that at least one juror was mistaken about the sufficiency of the evidence to prove gun use does not mean that instructional error was prejudicial; the failure to return a finding on the gun use allegation was more favorable to Banks than the evidence warranted. (Cf. *People v. Federico* (1981) 127 Cal.App.3d 20, 33.) Under the circumstances, the error was harmless beyond a reasonable doubt."

*C. The Resentencing Petition*

In April 2019, Banks filed a petition for resentencing under newly enacted section 1170.95. His central factual claim is that he was not the actual killer but merely an aider and abettor to the robbery, and that he had been only a minor participant in the robbery, who lacked any intent to kill and did not act with reckless indifference to human life. The trial court appointed counsel for Banks, and the People filed an initial response challenging the constitutionality of SB 1437. In May 2019, at the first status conference on the petition, the trial court stayed the petition pending the outcome of a binding decision on the constitutionality of SB 1437. After the constitutionality of SB 1437 was

8

upheld by an appellate court (see *People v. Lamoureux* (2019) 42 Cal.App.5th 241), the matter was further delayed due in part to the coronavirus pandemic.

Following supplemental briefing from the People regarding Banks's eligibility for or entitlement to resentencing relief, at a status conference hearing in October 2020, the trial court stated that "there is absolutely a set of facts that was presented to the jury from which they could convict [Banks] under the law as it exists today as the actual shooter." Citing the opinion from Banks's previous appeal, the trial court concluded that "[t]he record on appeal absolutely, affirmatively demonstrates that [Banks] could be convicted under a theory that is appropriate as of" the law as amended by SB 1437. It accordingly denied the petition.

## II. ANALYSIS

Banks contends that the trial judge improperly denied his petition for resentencing by applying an incorrect substantial evidence standard and by relying on our prior opinion. We agree with Banks (as do the People) that the trial court erred in applying a substantial evidence standard. However, our prior opinion is part of his record of conviction. (*People v. Law* (2020) 48 Cal.App.5th 811, 821.) That opinion forecloses any possibility that a reasonable factfinder could find Banks to be only a minor participant in the robbery who could not be convicted of felony murder under current

9

law.  The trial court therefore correctly found Banks to be ineligible for resentencing relief.[4]

*A.  Applicable Law*

Under section 1170.95, subdivision (b), a petitioner initiates the process of seeking resentencing "by filing a petition in the sentencing court that must include three pieces of information"—(i) a declaration saying the petitioner is eligible for relief under section 1170.95, (ii) the superior court case number and the year of petitioner's conviction, and (iii) whether or not the petitioner wants appointed counsel.  (*People v. Cooper* (2020) 54 Cal.App.5th 106, 114 (*Cooper*).)  "If a petition is missing any of these three pieces of information and the missing information 'cannot be readily ascertained by the [trial] court, the court may deny the petition without prejudice.'"  (*Id.* at p. 114.)  If a petition includes all the necessary information, it is facially sufficient and proceeds to the next phase of review.  Here, it is undisputed that Banks's petition was facially sufficient.

The next phase of review is governed by section 1170.95, subdivision (c).  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is

---

[4] Because our prior opinion shows that Banks is ineligible for relief, we need not decide whether, as Banks contends, the trial court also engaged in impermissible factfinding.

served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

Many appellate courts, including our own, have concluded this subdivision proceeds strictly chronologically, with each sentence in the statute being a new step in the process that follows the previous.  (See, e.g., *People v. Palacios* (2020) 58 Cal.App.5th 845.)  Under this view, a trial judge first determines whether the petitioner has made a prima facie showing that they fall within the provisions of section 1170.95, often called the "'eligibility'" review.  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975 (*Drayton*).)  Only when the judge is satisfied the petition makes this prima facie showing does the judge appoint counsel and order briefing.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 332 (*Verdugo*).)  After considering the briefing, the judge then conducts a second prima facie review to determine whether the petitioner makes a prima facie showing of entitlement to relief (the "'entitlement'" review).  (*Drayton*, at pp. 975-976.)[5]

---

[5]  We note that our colleagues in the First District have recently criticized this view of the review process and have argued that this process is needlessly complex, confusing, and based on an overly literal reading of section 1170.95, subdivision (c). (See *Cooper*, *supra*, 54 Cal.App.5th at pp. 118-123.)  In *Cooper* the court "decline[d] to adopt the view that section 1170.95(c) requires two prima facie reviews—much less two reviews that are substantively different—and entitles a petitioner to counsel during only the second one." (*Id.* at p. 118.)  Rather than requiring petitioners to show prima facie eligibility, before the judge must appoint counsel, *Cooper* holds that "a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel be appointed." (*Id.* at p. 123.)  Under *Cooper*, the "second" prima facie review— the "entitlement" review—is the only prima facie review.

When conducting a prima facie review, the judge's "role . . . is simply to decide whether the petitioner is ineligible for relief *as a matter of law*, making all factual inferences in favor of the petitioner." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, italics added.) In doing so, the judge may review the record of conviction, but only to determine if the record settles the legal question. (*Id.* at pp. 329-330.) At this stage the judge is not a factfinder and "should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but . . . need not credit factual assertions that are untrue as a matter of law." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Put differently, "the trial court's authority to make factual determinations at the prima facie stage 'is limited to *readily ascertainable facts* from the record (such as the crime of conviction), rather than *factfinding* involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).'" (*People v. Duchine* (2021) 60 Cal.App.5th 798, 812 (*Duchine*), italics added; quoting *Drayton*, *supra*, at p. 980.) "[T]he time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the

---

This split, particularly as it affects when the right to counsel arises under section 1170.95, is currently under review in the California Supreme Court. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1134, 1138 (*Lewis*), review granted Mar. 18, 2020, S260598.) However, because Banks was appointed counsel almost immediately after filing his petition, nothing we hold in this case depends on which of these two views regarding section 1170.95 procedure is correct.

12

factual issues." (*Duchine*, *supra*, 60 Cal.App.5th at p. 815.)[6]  Our review is de novo. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 980-981.)

*B.  Application*

We agree with the parties that the trial court erred by applying a substantial evidence standard.  We believe its task was not, as it stated, to determine whether there was *some* "set of facts that was presented to the jury from which they could convict [Banks] under the law as it exists today."  Rather, under *Drayton*, a judge conducting a prima facie review "should assume all facts stated in the section 1170.95 petition are true" other than those "untrue as a matter of law."  (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

Nevertheless, the record of conviction here demonstrates that Banks's key factual assertion—that he was only an aider an abettor in the robbery, not the actual killer—is untrue as a matter of law.  This is because this court, in Banks's earlier appeal, found the failure to give an instruction on accomplice liability for special circumstance murder

---

[6] This point—whether we generally assume the facts to be true at the prima facie stage—is also currently a matter of dispute.  (See *People v. Garcia* (2020) 57 Cal.App.5th 100, 115 (*Garcia*) [applying a substantial evidence standard].)  However, we agree with cases such as *Drayton* and *Duchine* and apply them here, as have a number of courts to have confronted the issue.  (See, e.g., *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438-443]; *People v. Secrease* (2021) 63 Cal.App.5th 231, 246; *People v. Rivera* (2021) 62 Cal.App.5th 217, 230.)

Whether a substantial evidence standard is appropriate at the evidentiary hearing (i.e., after an order to show cause has been issued) is also disputed and is currently under review in the California Supreme Court.  (*People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan 13, 2021, S265309.)

harmless beyond a reasonable doubt, concluding that the jury convicted Banks on a theory that he was the actual killer.

In his direct appeal, Banks contended that the trial court's instructions did not convey to the jury that it had to make one of two sets of findings to find the special circumstance allegation true *if he was not the actual killer*. Those findings were either that he aided and abetted with an intent to kill, or that he was a major participant who acted with reckless indifference to human life. (The instruction also stated that, if it believed Banks was the actual killer, it did not also need to find an intent to kill. See fn. 3, *ante*.) We agreed that the instruction should have been given, but we concluded, based on the strength of the evidence, that "[u]nder the circumstances, the error was harmless beyond a reasonable doubt."

The finding that the error was harmless beyond a reasonable doubt has legal significance. Our opinion concluded that the only theory actually presented at trial that could have been the basis for Banks' conviction was that based on his confession that he was the gunman who shot the victim. The conclusion that Banks' conviction was based on his being the actual killer precludes him from relief under section 1170.95 today. He cannot show that he cannot be convicted today because of changes to the law. As a result, a court reviewing Banks's petition need not credit his factual assertion that he was merely an aider or abettor of the robbery (not the murder) and eligible for relief.[7]

---

[7] Similarly, a court reviewing Banks's petition need not consider any effect the jury's deadlock on his firearm enhancement in count 1 would have made, as our prior

14

*Lewis* is analogous. There, the defendant was prosecuted for murder under three theories: direct aiding and abetting, aiding and abetting under the natural and probable consequences doctrine, and conspiracy. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1133.) The jury found the defendant guilty but did not indicate which theory it relied on. (*Ibid.*) On appeal, the defendant argued that the jury should never have been instructed on the natural and probable consequences doctrine. (*Ibid.*) The Court of Appeal agreed that there was error. (*Ibid.*) Nevertheless, it "held that the error was harmless 'beyond a reasonable doubt' based on 'strong evidence' that defendant 'directly aided and abetted [the perpetrator] in the premeditated murder of [the victim].'" (*Id.* at p. 1134.)

In later affirming the denial of the defendant's section 1170.95 petition, the court similarly relied on its earlier holding regarding harmless error:

"In our prior opinion, we agreed with defendant that the trial court erred in instructing the jury on the natural and probable consequences doctrine. [Citation.] We explained that we were required to reverse the judgment '"unless there is a basis in the record to find that the verdict was based on a valid ground."' [Citation.] The only '"valid ground"' available to the jury was the prosecution's alternative theory that

---

opinion already determined that the deadlock made no difference. In any event, "[i]t is well established that '[w]here a jury fails to agree on a verdict it is the same "as if there had been no trial on that issue."'" (*People v. Ochoa* (2011) 191 Cal.App.4th 664, 672-673.) Even a unanimous finding that Banks did *not* use a firearm would not have established that he was merely an aider and abettor. (See *People v. Santamaria* (1994) 8 Cal.4th 903, 919 [unanimous finding of not true on knife use allegation "shows only that there was a reasonable doubt in the minds of the jurors that defendant specifically used a knife. *It does not show the reverse, that the jury specifically found defendant was an aider and abettor*"].)

15

defendant acted as a direct aider and abettor. We concluded that the evidence that defendant 'directly aided and abetted [the perpetrator] in the premeditated murder . . . is so strong' that the instructional error was harmless 'beyond a reasonable doubt.' [Citation.] Stated differently, we held that the record established that the jury found defendant guilty beyond a reasonable doubt on the theory that he directly aided and abetted the perpetrator of the murder. The issue whether defendant acted as a direct aider and abettor has thus been litigated and finally decided against defendant. (See generally 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 208, pp. 683-684 [collateral estoppel applies in criminal cases].) This finding directly refutes defendant's conclusory and unsupported statement in his petition that he did not directly aid and abet the killer, and therefore justifies the summary denial of his petition based on the authorities and policy discussed above." (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1138-1139.) Pending further guidance from the California Supreme Court, we agree with *Lewis*'s view that, for purposes of section 1170.95, a prior finding that an error is harmless beyond a reasonable doubt sufficiently negates any factual claim such an error would have allowed a factfinder to make.

## C. Reliance on Prior Opinion

Banks also contends that the trial court should not have relied on our prior opinion "as the final word on the evidence that was presented at his trial." (Capitalization edited.) In *People v. Law*, *supra*, 48 Cal.App.5th at p. 821, this court held that a trial court may look to the record of conviction (such as an earlier opinion) in conducting a prima facie

16

review. More recently, in *People v. Clements* (2021) 60 Cal.App.5th 597, 612, this court noted that although "the contents of an appellate court opinion are subject to the ordinary rules regarding the admission of hearsay," "in posttrial proceedings, statements from prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial." Although *Clements* specifically focused on a later stage in the section 1170.95 process, we see no reason to depart from our analyses in those cases here.

"In any event, [Banks] has not identified any portion of our prior opinion that was not relevant or admissible but which the trial judge relied upon, so [he's] provided no basis for overturning the trial judge's ruling on the ground that it reached its ultimate conclusion that [he] was not entitled to relief based on irrelevant or inadmissible information in our prior opinion." (*People v. Clements*, *supra*, 60 Cal.App.5th at p. 613.) Accordingly, we reject his contention here.

### III. DISPOSITION

The court's order denying defendant's petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

17