[No. F007294. Fifth Dist. June 24, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL RAY VILLINES, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Debra R. Huston, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Edmund D. McMurray, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

BROWN (G. A.), P. J.—This is a revocation of probation proceeding. ■ Appellant seeks reversal because of "fundamental unfairness," grounded upon violation of due process, because the revocation was ordered at a second proceeding after the first proceeding had been dismissed due to the absence of a necessary prosecution witness. Appellant also urges that the court abused its discretion in permitting the toxicologist to testify as an expert, and, lastly, that the finding of violation of probation was not supported by clear and convincing evidence. We will reject appellant's contentions and affirm the judgment.

FACTS

On July 11, 1985, when appellant was placed on probation, he signed a paper advising him of the terms of probation. One of the conditions of probation was that appellant "[s]ubmit to drug use detection test as directed by a probation officer or any peace officer."

On February 11, 1986, Probation Officer Steven Williams went to appellant's residence to check whether appellant was staying clear of drugs. Because appellant was not home, Williams left instructions telling appellant to give a urine sample at juvenile hall that evening.

Sometime later, on that same date, or early the next morning, appellant went to juvenile hall to comply with Officer Williams's request. Deputy Probation Officer Kent Barnard was on duty at juvenile hall at the time.

Officer Barnard accompanied appellant into the restroom and observed appellant submit a urine sample into a vial. Officer Barnard sealed the vial, put it into an envelope and filled out the appropriate documents. He then placed the envelope in a locked storage refrigerator at juvenile hall.

At the time appellant submitted the sample, Officer Barnard asked him for identification. Appellant had no identification except a certificate of training to be a correctional officer. Officer Barnard also asked appellant to write his name on the back of the slip that had instructed appellant to provide the urine sample. Officer Barnard testified that he took a photograph of appellant and placed the picture in the envelope with the sample. This picture, however, was somehow misplaced or lost.

On February 21, 1986, county Probation Officer Robert Slater picked up the envelope and its contents from the locked refrigerator at juvenile hall and transported it to the adult probation department in the Kern County courts building, where he placed it in a locked refrigerator.

On February 25, 1986, Probation Officer Ronald Duckett removed the envelope from the refrigerator at adult probation. He wrote on the envelope what drug analysis was being requested and logged the information into a log to allow him to keep track of who had contact with the sample and who transported it to the lab. Officer Duckett could not recall whether he had seen a photograph inside the envelope. He testified that if there had been a photograph inside the envelope he would have either given it to the officer who requested the test or have placed it on a stack of photographs in the urine log underneath a clipboard.

Crime lab employee Dorothy Waite received the sealed envelope from Officer Duckett on February 26, 1986, at 4:28 p.m. She logged it and gave it a crime lab number. She then placed the envelope into a refrigerator. After the case had been logged in, she typed a toxicology report.

Brenda Smith, a criminalist at the Kern County crime lab, removed the sealed envelope and the attached report from the crime lab refrigerator. She took the sealed vial containing the urine sample out of the envelope and wrote on it the crime lab number that had been assigned by Dorothy Waite. Tests run on the urine sample on March 3, 4, and 6 indicated that the urine sample revealed the presence of morphine.

A declaration was filed on March 19, 1986, stating that appellant's urine sample revealed the presence of morphine. The probation revocation hearing was scheduled for April 11, 1986. On that date the case was called on the master calendar and Judge Friedman informed appellant of his right to

a speedy hearing and asked appellant if he agreed to continue the matter until April 14, 1986. Appellant indicated that he did not want to continue the matter. Due to the unavailability of a critical witness, Criminalist Brenda Smith, who tested the urine, the matter could not proceed as scheduled. The following colloquy ensued:

" THE COURT: All right. Let's bring on the gentleman that doesn't want to waive time. Let's go.

" MS. LANE: Your Honor, I just contacted the crime lab to insure that our criminalist will be available. She's currently at the dentist at this time.

" THE COURT: You may have to drop this revocation. We're ready to go. We don't have a time waiver. I can't wait.

" MS. LANE: We'll at least be able to start then. I hate to take up the Court's time.

" THE COURT: We're going straight through. Do you have enough to put it on? Let's don't get into it if your critical witness is missing.

" MS. LANE: Your Honor, she would be a critical witness and there is a possibility that we would put on everything except for her analysis and we would not be able to present her at this time.

" THE COURT: Talk to Mr. Sala.

" MS. LANE: I will discuss the matter with defense counsel.

" THE COURT: Why don't you do that right now.

" MS. LANE: Your Honor, do [sic] to insufficient evidence, the People would dismiss this declaration at this time because of the unavailable witness.

" MR. SALA: I believe there are no other holds on my client, then he should be released.

THE COURT: He is a free man. What is the basis of the pending revocation?

" MR. SALA: He tested, allegedly tested, positive for morphine.

" THE COURT: Okay, he is a free man."

On April 17, 1986, a second declaration letter was filed. The letter was almost identical to the March 19, 1986, declaration letter, except it noted: "The defendant appeared in Court on March 20, 1986, March 27, 1986, and April 11, 1986. On April 11, 1986, B. Smith was unavailable for Court and the case was dismissed without prejudice for lack of witness. This declaration is prepared in view of the dismissal.

"As indicated in the previous declaration, the defendant has had quite a number of drug related arrests. He served only 25 days at [*sic*] sentencing on this case and six months as a result of a revocation just four months ago. In spite of this, Mr. Villines continues to use drugs."

A probation revocation hearing was held beginning May 7, 1986, before Judge Stone. Prior to the presentation of witnesses, defense counsel made a motion to dismiss the present petition on the ground that it had been previously dismissed based on insufficient evidence. The deputy district attorney responded that it was her understanding that the case was dismissed "without prejudice, because a witness, the criminalist was unavailable." The case was refiled because "we do have our witness now." She noted that there was no other reason why the matter was dismissed; the matter was not heard on the merits. The court took the matter under submission, delaying its ruling until the court reviewed what transpired on April 11, 1986, and researched the issue of "whether a revocation proceeding can be dismissed for insufficiency of the evidence, and if dismissed for insufficiency of evidence, does it matter whether the insufficiency arose because of an unavailable witness or because of the quality of the evidence itself."

The hearing proceeded as scheduled. After the People rested, the matter was continued to permit defense counsel an opportunity to decide whether or not to call a toxicologist or present any evidence.

The hearing resumed on May 13, 1986, at which time the defense rested. The court heard argument on the pending motion to dismiss due to the previous filing of the declaration, and then denied the motion. The court reasoned that appellant had not previously been put in jeopardy at the April 11, 1986, hearing, there having been no evidence presented. The court reasoned: "[T]he dismissal was because the witness was unavailable and not because the People conceded the evidence was weak and insufficient to sustain a violation, and not because the court made any determination on the merits, and therefore the defendant has not been in jeopardy. There was no witness called ...." The court noted that it knew of no specific time limitations within which the revocation proceeding had to be heard other

than a due process reasonable time standard, and noted it did not think a time waiver was necessary.

DISCUSSION

PART I

*Revocation of Probation Based Upon Filing of Second Declaration After First Identical Declaration Dismissed on Prosecution's Motion*

Appellant asserts that, in the absence of a statutory provision permitting the refiling of a declaration letter seeking revocation after it had been previously dismissed,[1] it is a violation of his right to due process and fundamentally unfair to permit the refiling of the declaration letter when the prosecution was not prepared to go forward on the day originally set for the hearing. In so arguing, appellant attempts to analogize the instant situation to two federal cases, *United States* v. *Tyler* (5th Cir. 1979) 605 F.2d 851 and *United States* v. *Hamilton* (9th Cir. 1983) 708 F.2d 1412, wherein it was held that the undue delay between the time of the probation violation and the attempt to revoke probation constituted a denial of due process.

In *United States* v. *Tyler, supra,* defendant Tyler contended that he was denied due process and fundamental fairness because of the staleness of the violations of probation which became the basis for revocation of his probation on March 8, 1979. The revocation petition, filed March 1, 1979, alleged as violations of probation three misdemeanor convictions which Tyler sustained more than one year prior thereto, between November 1976 and January 1978; additionally, the probation officer had unsuccessfully attempted to revoke Tyler's probation almost ten months after the last of the three misdemeanors had been committed, but had not alleged any of the three misdemeanors in that earlier petition. The Fifth Circuit reversed the revocation of probation, reasoning that: "Absent some unusual circumstance or some deception by the probationer such a lengthy delay, coupled with the probation officer's obvious decision not to file these charges in the first petition, is fundamentally unfair.

"... The probationary system ... imposes a duty on a probation officer to represent the interests of both society and the probationer. An unreasonable

---

[1] Appellant correctly notes that Penal Code sections 1385 and 1387, authorizing the refiling of a felony action after dismissal for want of prosecution or termination pursuant to Penal Code sections 859b, 861, 871 or 995, are inapplicable to the instant case. "The purpose of section 1387 is to prevent improper successive attempts to prosecute a defendant." (*People* v. *Cossio* (1977) 76 Cal.App.3d 369, 372 [142 Cal.Rptr. 781].) The instant case does not involve the prosecution of appellant but the revocation of probation, an act of clemency; appellant has already been found guilty of the underlying crime.

delay in bringing charges of violations or a piecemeal approach in seeking revocation will rarely, if ever, serve the interests of either." (*United States* v. *Tyler, supra,* 605 F.2d at p. 853; fn. omitted.)

In *United States* v. *Hamilton, supra,* defendant Hamilton was on probation after pleading guilty to a charge of conspiracy to possess and sell stolen checks. As a condition of probation, he was ordered to spend 120 days in a jail-type setting. The court ruled that the 120 days could be served on consecutive weekends beginning October 23, 1976. Hamilton completed 49 of the 60 weekends. Thereafter, he did not report for jail. There is no evidence that he was admonished for not completing his jail term, nor that Hamilton's probation officer considered his default to be notable or a serious breach of his probation. Hamilton eventually informed the court of his default and petitioned to reschedule the remaining 11 weekends of his sentence, but neither the court nor the probation officer took action. After a new probation officer was assigned to the case, approximately three years after Hamilton's default, Hamilton's probation was revoked based in part on his failure to comply with the terms of probation. The Ninth Circuit reversed. The court reasoned that in light of Hamilton's efforts to bring the matter to the court's attention, his default with respect to the jail sentence could no longer be considered a valid basis for revocation. "Revocation of probation after unreasonable delay or under circumstances inherently misleading to the probationer is an abuse of discretion. [Citations.]

"... At some point ... violations of which the district court has been apprised and upon which the probationer has sought corrective action become stale or are waived as a basis for revoking probation." (*United States* v. *Hamilton, supra,* 708 F.2d at p. 1415.)

Conversely, the instant case involved neither unreasonable delay nor a piecemeal approach to revocation. The declaration letter was filed promptly following the probation officer's receipt of the urine testing results. The first hearing was to take place shortly thereafter. Following its dismissal, the second declaration letter was promptly filed and a hearing was again scheduled.

Nor was the court's action misleading. Because Ms. Smith was unavailable, the matter was dismissed and appellant was released from custody; he was ostensibly a "free man." It does not necessarily follow, however, that restriction of his liberty could not again be attempted.

Finally, there is absolutely no evidence that appellant was prejudiced by the delay in the proceeding caused by the dismissal of his first revocation proceeding.

We conclude that, particularly where there has been no evidence presented, the refiling of a declaration letter seeking revocation of probation following dismissal of the first revocation proceeding is permissible simply because there are no statutory, due process, or policy reasons that preclude refiling.

PARTS II, III*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Best, J., and Ballantyne, J., concurred.

---

* See footnote *ante,* page 1298.