[No. A130065. First Dist., Div. One. Jan. 24, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MYESHA MARIE QUARTERMAN, Defendant and Appellant.

## COUNSEL

Violet Elizabeth Grayson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MARCHIANO, P. J.**—Defendant Myesha Marie Quarterman, on probation, pawned a camera and camera accessories, allegedly with knowledge that the items were stolen. She was charged with receiving stolen property and violation of her probation. A joint preliminary hearing and probation violation hearing was held, at which only a police officer testified to various hearsay

statements, as permitted by Proposition 115. (Cal. Const., art. I, § 30, subd. (b).)[1] The prosecutor and the defense attorney agreed the court would hear the evidence and rule separately on the two proceedings. The court held defendant to answer, but did not sustain the probation violation after hearing the evidence. Over defendant's due process and collateral estoppel objections, the district attorney subsequently realleged the same basis for a probation violation and successfully asked a different judge for a new probation hearing. At the second hearing, the camera owner and manager of the pawnshop testified. This time, the probation violation was sustained. The issue is straightforward: are the People permitted to initiate a second probation violation proceeding on the same ground after failing to sustain their burden of proof at a first, fully litigated, probation violation hearing? For the reasons explained below, we conclude collateral estoppel bars the second proceeding in this case.[2] Therefore, we reverse the court's order revoking probation.

## PROCEDURAL BACKGROUND

Following defendant's entry of no contest pleas to various theft-related felonies,[3] on June 17, 2008, the court suspended imposition of sentence and placed defendant on probation for three years on the condition, among others, that she obey all laws.

On March 10, 2010, the District Attorney of Solano County filed a request for revocation of defendant's probation based on her arrest by the Vallejo Police Department, as documented in police report No. VPD-01552. Defendant was arrested after she pawned a stolen camera and camera equipment. Probation was summarily revoked, and a formal revocation hearing was set for the same time as the preliminary hearing in the underlying criminal action.

---

[1] Initiative Measure (Prop. 115), approved June 5, 1990, effective June 6, 1990. "Proposition 115 [is] known as the Crime Victims Justice Reform Act . . . . Proposition 115 added California Constitution article I, section 30, subdivision (b), and amended Penal Code section 872, subdivision (b), declaring hearsay evidence admissible at preliminary hearings in criminal cases, as provided by law. (See *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1070–1071 [2 Cal.Rptr.2d 160, 820 P.2d 262].)" (*People v. Arreola* (1994) 7 Cal.4th 1144, 1151, fn. 3 [31 Cal.Rptr.2d 631, 875 P.2d 736] (*Arreola*).)

[2] In light of our conclusion, we need not and do not reach defendant's two additional arguments that, at the second hearing, the trial court erroneously considered prior misconduct evidence in making the probation violation determination, and that the evidence is insufficient to support a finding that defendant knew the property was stolen.

[3] On April 1, 2008, defendant pleaded no contest to an amended felony complaint alleging one count of identity theft, one count of receiving stolen property and four counts of commercial burglary in Solano County. (Pen. Code, §§ 530.5, subd. (a), 496, subd. (a), 459.)

The joint preliminary/revocation hearing was held on March 30, 2010. Detective Joseph Iacono, with the special operations section of the Vallejo Police Department, was the sole witness.[4] On February 13, 2010, Detective Iacono spoke to victim Christopher Riley, who told him that an expensive camera and related camera equipment had been stolen from his car in Vallejo during the first part of February 2010. Riley put the loss at $6,000 or slightly more. He also said that a photographer friend had told him "that a person had essentially cold called him asking to sell some camera equipment."[5] Mr. Riley provided the police with the phone number of the person who called his friend.

Detective Iacono also spoke with Jason Reyes, the manager of Best Collateral Pawnshop in Vallejo. Mr. Reyes found Riley's camera and equipment in the pawnshop. Mr. Riley verified that the items were his. Mr. Reyes advised Iacono that the person who had pawned the camera and equipment had presented valid identification and provided a fingerprint. That person was defendant Myesha Quarterman.

Detective Iacono subsequently *Mirandized*[6] and interviewed defendant. She said that she obtained a bag full of cameras and related camera equipment from a Black male adult whom she had known for nine months. She knew him by his street name. He asked her to pawn the items for $200. She suspected they might be stolen, so she asked the man several times if they were stolen. He assured her several times that the camera was not stolen.

According to Iacono, defendant said she thought the camera might be stolen because "everything that comes around her house is stolen, people are crankers." She also told Iacono that she thought the items were worth at least $1,000, and that she did think it was reasonable for her to think the items were stolen. Iacono did not ask her if she knew much about cameras or had ever purchased one. Iacono told defendant she should have known and considered that she had a history of receiving stolen property, and she responded that she knew that to be true. She admitted that she pawned the items at Best Collateral Pawnshop for $150.

---

[4] A defense witness, Jontue Thomas, was subpoenaed and did appear, but was not called to testify.

[5] At this point, defense counsel moved to strike "the officer's hearsay testimony about what Mr. Riley previously told him, for probation violation purposes," but acknowledged it was admissible for preliminary hearing purposes. The prosecutor "submit[ted] it on that," and the trial court agreed to consider the testimony solely for purposes of the preliminary hearing. The prosecutor then asked the court to allow the hearsay for the probation violation because it was "reliable hearsay." The court reaffirmed its ruling, stating that it did not think this was the type of reliable hearsay contemplated and allowed by the case law. The trial court agreed to consider defense counsel's objection a continuing one to all hearsay for purposes of the probation violation.

[6] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

At the conclusion of the hearing, the court held defendant to answer on the charge of receiving stolen property. On the revocation, however, the court found there was no evidence from defendant's statement to show that the camera was in fact stolen, and there was nothing outside of the Proposition 115 testimony given by Detective Iacono to prove that fact. It ruled that since "there is a lack of evidence on the element of 'stolen property' " the court "does not find [defendant] in violation."

Subsequently, a different judge set the same probation matter to be heard with the jury trial in the criminal action. On June 7, 2010, defendant filed a written motion to dismiss the probation revocation proceedings, in which she objected to "the prosecutor's attempt to revoke her probation . . . by litigating the same issue previously litigated and adjudicated in her favor on March 30, 2010." Relying on *Lucido v. Superior Court* (1990) 51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223] (*Lucido*), the court denied the motion. On June 10, 2010, the district attorney refiled a request for revocation of probation identical in all material respects to the one filed on March 10, 2010.[7]

On June 10, 2010, at the prosecution's request and over defense objection, the court held a second revocation hearing.[8] Mr. Riley and Mr. Reyes testified, along with Detective Iacono. The court found defendant in violation of her probation. On August 31, 2010, probation was modified and reinstated. Defendant timely appealed.

## DISCUSSION

Defendant contends that both collateral estoppel and federal due process prevent the prosecutor from refiling an identical probation violation petition, and obtaining a new hearing on it, after a different judge has already held a hearing, heard the evidence presented by the prosecutor, and found that it was insufficient to prove the probation violation alleged in the petition.[9] For the reasons we explain below, we conclude that defendant's collateral estoppel claim has merit on the particular facts before us.

---

[7] On July 2, 2010, defendant filed a petition for writ of mandamus and/or prohibition and a request for stay. On July 13, 2010, we denied the petition and request for stay without prejudice to defendant's right to appeal.

[8] The revocation was not heard with a jury trial. The appellate record before us does not reflect the disposition of the criminal action, only that the prosecutor considered dismissing it.

[9] Double jeopardy principles do not apply in probation revocation proceedings (*In re Coughlin* (1976) 16 Cal.3d 52, 60–61 [127 Cal.Rptr. 337, 545 P.2d 249]), and defendant does not argue that they do.

■ "Collateral estoppel is one of two aspects of the doctrine of res judicata. In its narrowest form, res judicata ' "precludes parties or their privies from relitigating a *cause of action* [finally resolved in a prior proceeding]." ' [Citation.] But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an *issue* ' "necessarily decided in [prior] litigation [may be] conclusively determined *as* [*against*] *the parties* [*thereto*] *or their privies* . . . in a subsequent lawsuit on a *different* cause of action." ' [Citation.]" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229].) Collateral estoppel applies in criminal proceedings independent of double jeopardy principles. (*People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1 [104 Cal.Rptr.3d 764, 224 P.3d 86] (*Sparks*); *People v. Meredith* (1992) 11 Cal.App.4th 1548, 1555 [15 Cal.Rptr.2d 285] (*Meredith*).)

■ Collateral estoppel will bar relitigation of an issue decided at a previous proceeding if (1) the issue decided at the previous proceeding is *identical* to the one which is sought to be relitigated; (2) the issue decided in the previous proceeding was *actually litigated*; (3) the issue sought to be relitigated was *necessarily decided*; (4) the decision in the previous proceeding is *final and on the merits*; and (5) the party against whom preclusion is sought is *the same as, or in privity with*, the party to the previous proceeding. (*Lucido, supra*, 51 Cal.3d at p. 341.) Nevertheless, even when the threshold requirements have been met, "policy considerations may limit its use where the limitation on relitigation underpinnings of the doctrine are outweighed by other factors." (*Jackson v. City of Sacramento* (1981) 117 Cal.App.3d 596, 603 [172 Cal.Rptr. 826].) For that reason, "the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Lucido, supra*, 51 Cal.3d at p. 343.)

In *Lucido*, our Supreme Court, in the context of criminal justice policies, considered whether collateral estoppel principles precluded a criminal trial on an indecent exposure charge after a probation violation hearing in which the justice court found that the People had failed to prove a violation of probation based on the same charges. After finding that the defendant met all of the threshold requirements of collateral estoppel, the *Lucido* court, nevertheless, decided that application of the doctrine did not serve the fundamental principles underlying it, and refused to give the no-probation-violation finding preclusive effect.

Applying the analytical framework established by *Lucido* to the question before us, we first consider whether the threshold requirements of collateral estoppel have been met, and then whether the public policies underlying the doctrine favor its application in this case.

Here, all of the prerequisites for the application of collateral estoppel have been met. First, the identical issue was decided at both revocation proceedings, that is, "whether the defendant's conduct demonstrates that the leniency extended by the grant of probation remains justified." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1087 [48 Cal.Rptr.3d 75, 141 P.3d 197].) We, unlike the *Lucido* court, are not faced with different proceedings which "serve different public interests." (*Lucido, supra*, 51 Cal.3d at p. 347.)

■ Second, the issue decided in the previous proceeding was actually litigated. "[T]he important question, at least for threshold purposes, is whether the People had the *opportunity* to present their entire case at the revocation hearing, not whether they availed themselves of the opportunity." (*Lucido, supra*, 51 Cal.3d at p. 340, fn. 2.) Here, the People had the opportunity to present their entire case. ■ Presumably, with full awareness that due process requires a showing of unavailability or other good cause before testimonial hearsay may be presented in lieu of live testimony at a probation revocation hearing (*People v. Winson* (1981) 29 Cal.3d 711 [175 Cal.Rptr. 621, 631 P.2d 55] (*Winson*); *Arreola, supra*, 7 Cal.4th 1144), the probation revocation matter was set to be heard with the preliminary hearing in action No. 206608. On the hearing date, the parties confirmed their understanding that the two matters were joined for hearing before the hearing started and both sides indicated they were ready to proceed. The prosecution called Detective Iacono as its sole witness.[10] At the conclusion of Detective Iacono's testimony, the prosecutor rested. Based on the state of the evidence, defense counsel opted not to call any witnesses, although one witness had been subpoenaed and was present. Following brief argument on the preliminary hearing, the court held defendant to answer. The matter was continued

---

[10] Detective Iacono finished testifying about what Mr. Riley had told him when the court declared the noon recess. When proceedings resumed, defense counsel moved "to strike the officer's hearsay testimony about what Mr. Riley previously told him, for probation violation purposes. I realize it's admissible for preliminary hearing purposes." The following exchange then occurred:

"THE COURT: All right. [Prosecutor]?

"[PROSECUTOR]: I will submit it on that.

"THE COURT: It is hearsay, so I will consider it for purposes of the prelim only, and not the probation violation hearing.

"[PROSECUTOR]: I think the Court is allowed to listen to reliable hearsay. I would ask the Court to allow that. [¶] . . . [¶]

"THE COURT: All right. I don't think this is the type of hearsay—reliable hearsay contemplated by both cases and allowed for that, so I won't consider it for the probation violation."

until the afternoon for further argument on the probation violation matter. The court requested that during the break the parties research whether the corpus delicti rule applies in revocation proceedings. After the break, the court heard further argument on the probation violation, determined that the corpus delicti rule did not apply (*People v. Monette* (1994) 25 Cal.App.4th 1572, 1575 [31 Cal.Rptr.2d 203]), and concluded there was "no evidence that the property was in fact stolen, so I . . . won't find her in violation. [¶] That leaves us with the felony arraignment date . . . ." At no point did the prosecutor move to dismiss the probation revocation petition without prejudice, or request a continuance, or make any attempt to show that Mr. Riley was legally unavailable, or that other good cause existed to excuse Mr. Riley from testifying.

█    Third, the issue the prosecutor sought to relitigate—whether defendant's probation should be revoked—was necessarily decided. As defined by the *Lucido* court, "necessarily decided" means that resolution of the issue was not " 'entirely unnecessary' to the judgment in the initial proceeding." (*Lucido, supra*, 51 Cal.3d at p. 342.) Here, the whole point of the formal revocation hearing was to determine whether defendant had violated her probation by failing to obey all laws, specifically the law prohibiting knowing possession of stolen property. This requirement has been met.

█    Fourth, the court's decision was final and on the merits. For purposes of collateral estoppel, a "final judgment" is defined as one that is "free from direct attack." (*People v. Sims* (1982) 32 Cal.3d 468, 486 [186 Cal.Rptr. 77, 651 P.2d 321].) Having heard the evidence presented and found that defendant was not in violation of her probation, there was nothing left for the court to do but reinstate probation, as was reflected in the clerk's minutes.[11] (See *People v. Cooper* (2007) 149 Cal.App.4th 500, 520 [57 Cal.Rptr.3d 389] [a determination is final for collateral estoppel purposes when " '*no further judicial act remains to be done to end the litigation*. . . .' "] Moreover, like the revocation findings in *Lucido*, the finding here "indicated final disposition of the . . . allegations on the merits." (*Lucido, supra*, 51 Cal.3d at pp. 342, 346–347, fn. 9 █    [Although "probation revocation hearings do not result in criminal *judgments* . . . this does not mean they cannot result in equally valid determinations"].) If the prosecution believed the court's order was

---

[11] Although the court did not orally set any date for further proceedings except an arraignment date in the criminal action, notations in the clerk's minutes for March 30, 2010, show that probation remained revoked; that at the formal revocation hearing the "court [found] there is a lack of evidence on the element of 'stolen property' & therefore does not find Dft in violation"; and the matter was continued to April 13, 2010, in the same department (Dept. 15) for "Clarification Reinstate Probation?"

erroneous, its remedy was to seek appellate review of the court's order.[12] It declined to do so. Thus, the order was final for the purposes of collateral estoppel.

Finally, the Solano County District Attorney and defendant were the parties in both probation revocation proceedings. Thus, there was identity of parties. In sum, all five threshold requirements for collateral estoppel have been met, and the People do not argue otherwise.

Therefore, we must consider whether application of issue preclusion to this case is consistent with its underlying purposes, which are the "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation . . . ." (*Lucido, supra*, 51 Cal.3d at p. 343.) Here, the People do not explicitly address each of these considerations. Instead, the People argue that since jeopardy does not attach in probation revocation hearings, neither the ban against double jeopardy nor the bar of collateral estoppel is "implicated."

■ No one disputes that double jeopardy is not implicated here. Double jeopardy and res judicata (or collateral estoppel) are not coextensive with one another, even though both doctrines share "the same basic roots" (*Cherry v. Superior Court* (2001) 86 Cal.App.4th 1296 1308 [104 Cal.Rptr.2d 131] (conc. opn. of Epstein, J.)) and their purposes "substantially overlap." (*People v. Barragan* (2004) 32 Cal.4th 236, 254 [9 Cal.Rptr.3d 76, 83 P.3d 480].) Except in its nonmutual incarnation, collateral estoppel applies in criminal proceedings independent of double jeopardy principles. (*Meredith, supra*, 11 Cal.App.4th at p. 1555; *Sparks, supra*, 48 Cal.4th 1.) For example,

---

[12] An order reinstating probation is not appealable as an order made after judgment affecting the People's substantial rights. (Pen. Code, § 1238, subd. (a)(5).) "[S]ection 1238, subdivision (d) prohibits not only appeals from orders granting probation, but also 'prohibits appeals that, in substance, attack a probation order, even if the order explicitly appealed from may be characterized as falling within one of the authorizing provisions of subdivision (a). Thus, if the People seek, in substance, reversal of the probation order, the appeal is barred by subdivision (d) however they may attempt to label the order appealed from. [Citation.]' (*People v. Douglas* [(1999)] 20 Cal.4th 85, 93 [82 Cal.Rptr.2d 816, 972 P.2d 151].)" (*People v. Alice* (2007) 41 Cal.4th 668, 682 [61 Cal.Rptr.3d 648, 161 P.3d 163]; see *People v. Bailey* (1996) 45 Cal.App.4th 926, 931 [53 Cal.Rptr.2d 198].) But see *Lucido, supra*, 51 Cal.3d at page 342 and footnote 4 (under Pen. Code, former § 1466, subd. (a)(6), court's probation order in a misdemeanor case was appealable as an order after judgment affecting the People's substantial rights). However, the People are not without a remedy, because Penal Code section 1238, subdivision (d) also permits the People to seek a writ regarding a disputed probation order. In any event, "[b]ecause it was free from direct attack, the hearing decision was 'final.' " (*Lucido, supra*, at p. 342.)

the acquittal of one confederate to a crime will not bar the conviction of another in the same or later trial proceedings. (*Sparks, supra*, 48 Cal.4th 1.) *Lucido* teaches that collateral estoppel will bar relitigation of an issue decided at a previous proceeding *if* all the requirements are met and *if* its application will serve the doctrine's underlying policies. Collateral estoppel is implicated in this case, even if double jeopardy is not.

■ Next, the People argue that "the trial court did not determine that [defendant] did not violate probation but rather that it could not consider hearsay as the sole basis of establishing that the property was stolen." The record does not support the People's characterization of the issue before the trial court. The trial court *did* determine that defendant did not violate her probation. It ruled: "[I] won't find her in violation." The reason it would not do so was that "there's no evidence that the property was in fact stolen . . . ." In other words, the evidence did not show that defendant had failed to "obey all laws." It is not against the law to pawn one's own property, or someone else's property at his or her request. ■ The People had the burden of producing evidence and the burden of persuasion showing a probation violation occurred by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441 [272 Cal.Rptr. 613, 795 P.2d 783]; *People v. Atwood* (2003) 110 Cal.App.4th 805, 812–813 [2 Cal.Rptr.3d 67].) Here, the People failed to shoulder that burden, despite knowing that they were to be prepared for the probation revocation hearing.

■ Third, the People argue that since the prosecution could have proceeded with a criminal trial on the same charge, and affording defendant a new probation revocation hearing instead was less intrusive than a criminal trial, defendant was not prejudiced. However, our record does not show that the new prosecution was dismissed, only that the prosecutor contemplated dismissal. In any event, the prosecution has an unreviewable right to proceed with—or dispense with—a criminal trial on the same charges as those on which a probation revocation is premised. Put differently, the choice to pursue or forgo a criminal trial rests entirely with the prosecution, irrespective of the court's ruling at a probation violation hearing. That is the import of *Lucido*. The People's rationale does not protect litigants from harassment by vexatious litigation, because a properly pursued criminal trial is not vexatious. Nor does it promote judicial economy because, under the People's rationale, the prosecution could choose to pursue both a criminal trial and serial probation revocations. But in such a case, the defendant would be prejudiced, because in addition to the sentence he or she would face upon conviction, the defendant would also face a separate sentence for the original offense if his or her probation were revoked at a subsequent hearing.

Finally, the People's argument that *defendant* could have success-fully appealed an adverse ruling if the trial court had considered testimonial hearsay to establish the probation violation, notwithstanding *Winson* and *Arreola*, and that a reversal on appeal would have resulted in a new hearing, is not persuasive. It is not harassment, or vexatious, for a defendant to pursue vindication of his or her rights by way of appeal, even if a new hearing results: in that case, the defendant has asked for it; it has not been forced on the defendant. For that matter, the People could have sought writ review of the court's ruling and, had they prevailed, would have won a new hearing. In our view, the right of appellate review by appeal or writ is a neutral factor with respect to the consideration of judicial economy. On the other hand, permitting "the People [to] bypass[] orderly procedures for review" (*In re Kowalski* (1971) 21 Cal.App.3d 67, 71 [98 Cal.Rptr. 444]) does not serve, and may undermine, the integrity of the judicial system.

Encouraging parties to pursue their appellate remedies, instead of asking a different judge to rehear a matter that was decided adversely to them the first time, serves the purpose of preserving the integrity of the judicial system, and promotes respect for the judicial process. Moreover, it is a general rule that "one trial judge cannot reconsider and overrule an order of another trial judge. There are important public policy reasons behind this rule. 'For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court.' " (*People v. Riva* (2003) 112 Cal.App.4th 981, 991 [5 Cal.Rptr.3d 649], fns. omitted (*Riva*).)

"[F]or reasons of comity and public policy . . . trial judges should decline to reverse or modify other trial judges' rulings unless there is a highly persuasive reason for doing so . . . ." (*Riva, supra,* 112 Cal.App.4th at p. 992.) While the second judge here did not, strictly speaking, "reverse" or "overrule" the first judge, we nevertheless see no highly persuasive reason for the second judge to have entertained a new revocation petition on the same ground as the one on which the first judge had already ruled with finality. Although the prosecutor called Mr. Riley as a witness at the second hearing, the prosecutor never attempted to explain or justify his failure to call Mr. Riley at the first hearing, to the first judge *or* the second judge. All he explained to the second judge was that "we are alleging a probation violation based on this new case. The reason why the Court did not find her in violation at the preliminary hearing was because, 115 preliminary hearing, [defense counsel] objected to having any of the hearsay heard in conjunction with the PV, so Judge Kam was able to bifurcate it. [¶] So I anticipated

having new evidence, which is now the statements of the victim." He later added: "[I] do have now the victim available to testify that the items were stolen." This explanation falls far short of the showing of unavailability or other good cause which our Supreme Court has held is required by due process before testimonial hearsay may be admitted at a probation violation hearing.

Because "the [probationer] faces lengthy incarceration if his [probation] is revoked" (*Morrissey v. Brewer* (1972) 408 U.S. 471, 482 [33 L.Ed.2d 484, 92 S.Ct. 2593] (*Morrissey*)), and termination of his or her liberty "inflicts a 'grievous loss' on the [probationer] and often on others" (*ibid.*), the probationer has "a continued post-conviction interest in accurate fact-finding and the informed use of discretion by the trial court . . .'to insure that his liberty is not unjustifiably taken away . . . .' " (*Winson, supra*, 29 Cal.3d at p. 715; see *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 785 [36 L.Ed.2d 656, 93 S.Ct. 1756] (*Gagnon*).) And, although a probationer facing revocation is not entitled to the "full panoply of rights" due a defendant in a criminal trial (*Morrissey, supra*, at p. 480), and a probation revocation hearing is more flexible and less formal than a criminal trial, the probation revocation hearing is nevertheless an important hearing at which due process requires "(a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right *to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation]." (*Morrissey, supra*, 408 U.S. at p. 489, italics added [extending due process rights to parolees]; see *Gagnon, supra*, 411 U.S. at p. 782 [extending *Morrissey* protections to probationers].)

In *Winson*, our Supreme Court held that "[a] preliminary hearing transcript of a witness'[s] testimony in a defendant's related criminal case is not a proper substitute for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause." (*Winson, supra*, 29 Cal.3d at pp. 713–714.) The *Winson* court reversed the revocation decision because "the testimony at issue was that of the sole percipient witness to the alleged [probation] violation, a finding of *no* legal unavailability was made in the underlying proceedings in which the charges were then dismissed, no additional evidence was introduced which established the witness'[s] unavailability, and the court made no

specific finding of good cause for denying the right to confront and cross-examine." (*Id.* at p. 719.)[13]

Thereafter, in *Arreola*, our Supreme Court reaffirmed *Winson*'s continuing vitality. The *Arreola* court rejected—as inconsistent with *Winson* and subsequent United States Supreme Court opinions in *Black v. Romano* (1985) 471 U.S. 606 [85 L.Ed.2d 636, 105 S.Ct. 2254], *United States v. Inadi* (1986) 475 U.S. 387 [89 L.Ed.2d 390, 106 S.Ct. 1121], and *Coy v. Iowa* (1988) 487 U.S. 1012 [101 L.Ed.2d 857, 108 S.Ct. 2798]—the Attorney General's argument that "even when there has been no showing that a declarant is unavailable, 'other good cause' within the meaning of *Winson* is established whenever a defendant is notified explicitly, prior to a preliminary hearing, that testimony at the preliminary hearing may be used against the defendant at a subsequent probation revocation hearing." (*Arreola, supra,* 7 Cal.4th at p. 1148.) The *Arreola* court insisted on a showing of good cause to dispense with live testimony, stating that "[t]he broad standard of 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Arreola, supra,* 7 Cal.4th at pp. 1159–1160.)

In *Arreola*, the record reflected that "the prosecution failed to offer any justification whatsoever for not securing the presence of . . . the sole prosecution witness at the preliminary hearing . . . ." There was also "no evidence (or even assertion) of his unavailability or that his live testimony could be obtained only at great inconvenience." In addition, the record before it suggested that the county "may have implemented a general policy and practice of introducing preliminary hearing transcripts as a substitute for live testimony at all probation revocation hearings." (*Arreola, supra,* 7 Cal.4th at p. 1160.) The *Arreola* court concluded that "the trial court's admission of the preliminary-hearing transcript at defendant's probation revocation hearing, without any showing of good cause, violated defendant's federal constitutional right to due process of law as defined by the United States Supreme Court's decision in *Morrissey* and by this court's application of *Morrissey* in our *Winson* decision." (*Arreola, supra,* 7 Cal.4th at pp. 1160–1161.) Ultimately, however, it did not reverse the judgment because "[s]ubstantial evidence was received—independent of the preliminary-hearing transcript—establishing that defendant had violated his probation in several respects." (*Id.* at p. 1161.)

---

[13] See also *In re Miller* (2006) 145 Cal.App.4th 1228, 1238–1240 [52 Cal.Rptr.3d 256] (hearsay statements of witnesses were not admissible at parole revocation hearing).

Likewise, in this case, the prosecutor failed to offer any justification whatsoever for Mr. Riley's nonappearance at the combined preliminary/ revocation hearing, and there was no evidence or even an assertion that he was legally unavailable or that his testimony could only be secured at great inconvenience. The prosecutor's complete failure to make any effort to justify the witness's absence, coupled with his failure to ask for a continuance (even though defendant had waived time for the preliminary hearing), or move to dismiss the revocation petition without prejudice, does not permit probation revocation proceedings to be decided on the basis of hearsay preliminary hearing testimony. This is almost precisely the procedure which the *Arreola* court hoped to stop by establishing a rule of law and a protocol to follow.[14]

In this case, the question whether the prosecutor had good cause to dispense with live testimony at a revocation hearing is not before us. However, in considering whether application of collateral estoppel in this case would further the public policy of preserving the integrity of the judicial system, we think it is important that the prosecutor in this case did not attempt to follow the law as established by the California Supreme Court. We conclude that, on the facts of the case before us, collateral estoppel should apply.

A few California cases have considered the preclusive effect of prior probation revocation proceedings in various factual contexts, but not one, so far as we have found, has considered issue or claim preclusion in the precise context of a fully litigated probation revocation hearing that went to decision and was followed by a new petition and hearing on exactly the same grounds. We find these cases distinguishable, and they do not compel a different result, as we now discuss.

*People v. Ochoa* (2011) 191 Cal.App.4th 664 [119 Cal.Rptr.3d 648], is similar to *Lucido*, in that the defendant sought to use the probation revocation decision in his favor to preclude a criminal trial. In *Ochoa*, when the jury at the defendant's first trial was unable to reach a verdict, the trial court declined to revoke the defendant's probation at a subsequently held probation revocation hearing. The defendant was convicted at a second jury trial. On appeal, the defendant argued that the trial court's failure to find a probation violation

---

[14] "As a means of avoiding needless duplication and promoting judicial economy," the *Arreola* court proposed that, "in some instances the preliminary hearing on the charges that give rise to the probation revocation proceeding may be coordinated with the final revocation hearing, in a single proceeding." (*Arreola, supra*, 7 Cal.4th at p. 1159.) But the court did not approve the use of Proposition 115 testimony as the basis of a probation violation finding. In fact, the prosecutor in *Arreola* specifically argued that the preliminary hearing transcript should be admissible in the probation revocation hearing because " 'in this particular preliminary hearing there was no [Proposition] 115 hearsay . . . .' " (*Arreola, supra*, at p. 1151.)

following the first trial collaterally estopped his second *trial*. Applying *Lucido*, the *Ochoa* court found that even though the threshold requirements for collateral estoppel were satisfied, the public policies underlying the doctrine militated against its application to foreclose the second trial after a mistrial.

Other cases that seem to present similar scenarios involving probation revocations in fact have not been decided on collateral estoppel grounds. For example, in *People v. Bracey* (1994) 21 Cal.App.4th 1532 [26 Cal.Rptr.2d 730] (*Bracey*), the defendant was on probation for a drug offense when he was arrested for selling drugs to an undercover police officer. On the eve of trial, the prosecutor elected to dismiss new charges and proceed on the previously noticed probation revocation proceedings only. A formal hearing was held at which both the defendant and the undercover officer testified. Probation was revoked and reinstated despite the prosecutor's request for a state prison sentence. The next day, the same criminal charges were refiled. The defendant moved to dismiss, and a hearing was held on the district attorney's reasons for refiling. Pursuant to Penal Code section 1385, the trial court dismissed the new complaint on the grounds that the prosecution was vindictive and thereby denied the defendant due process. The People appealed and the appellate court reversed the order dismissing the new action, finding no presumption of vindictiveness. Although the *Bracey* court cited *Lucido* for its observations on "the separateness of the probation revocation proceeding and the new criminal proceeding" (*Bracey, supra*, at p. 1548), it did not render an opinion on whether collateral estoppel applied to the situation before it. In any event, the proceeding which Bracey hoped to preclude was a *trial*, not another probation revocation hearing.

Although *People v. Villines* (1987) 192 Cal.App.3d 1298 [237 Cal.Rptr. 868] (*Villines*) provides the closest factual analog to this case, it similarly contains no discussion of collateral estoppel. In *Villines*, a declaration was filed seeking revocation of the defendant's probation for testing positive for morphine. The defendant refused to waive time for his probation revocation hearing. Due to the unavailability of a critical witness—the criminalist who ran the test—the prosecutor was unable to proceed with the hearing and preemptively dismissed the probation revocation petition without any determination. The defendant was released. Thereafter, a second declaration, citing the same ground for revocation, was filed. Defense counsel made a motion to dismiss the petition on the ground that it had previously been dismissed based on insufficient evidence. The court took the matter under submission and proceeded to hearing. At the conclusion of the hearing on the merits, the court denied the motion to dismiss, reasoning that the defendant had not been put in jeopardy at the first hearing since no evidence had been presented; the

dismissal was occasioned by witness unavailability rather than weak evidence; the court had not made any determination on the merits; and there was no violation of "a due process reasonable time standard." (*Villines, supra*, at pp. 1302–1303.)

Villine's probation was revoked and he appealed. Analogizing to federal cases which held that the undue delay between the time of the probation violation and the attempt to revoke probation constituted a denial of due process, the defendant argued that allowing the prosecution to refile probation revocation charges after being unprepared to proceed on the original hearing date was fundamentally unfair and a denial of due process. The *Villines* court rejected that contention, holding that "the instant case involved neither unreasonable delay nor a piecemeal approach to revocation. . . . [¶] Nor was the court's action misleading. Because [the witness] was unavailable, the matter was dismissed and [defendant] was released from custody . . . ostensibly a 'free man.' It does not necessarily follow, however, that restriction of his liberty could not again be attempted. [¶] Finally, there is absolutely no evidence that [defendant] was prejudiced by the delay in the proceeding caused by the dismissal of his first revocation proceeding. [¶] We conclude that, particularly where there has been no evidence presented, the refiling of a [petition] seeking revocation of probation following dismissal of the first revocation proceeding is permissible simply because there are no statutory, due process, or policy reasons that preclude refiling." (*Villines, supra*, 192 Cal.App.3d at pp. 1304–1305.)

Aside from the fact that the *Villines* court was not asked to consider whether collateral estoppel presented policy reasons that precluded refiling, it is clear that in *Villines* the prosecutor *dismissed* the petition and released the defendant when it became obvious that a critical witness was unavailable. Thus, there was no fully litigated hearing on the merits to which collateral estoppel could apply. We have no quarrel with the reasoning or result in *Villines*, or any of the other cases reviewed above, but those cases have no application to the facts before us.

## CONCLUSION

█ The trial court erred in failing to apply the doctrine of collateral estoppel to preclude a second probation violation hearing because all of the requirements of collateral estoppel were met, and the court's interest in preserving the rule of law and the integrity of the judicial process outweighs the interest in convenience. Notably, defendant was answerable to the justice system as she remained on probation after the first hearing and was still subject to prosecution for the ill-gotten camera equipment.

## DISPOSITION

The order revoking probation is reversed.

Margulies, J., and Banke, J., concurred.