Filed 2/1/16  Knott v. JPMorgan Chase Bank CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL KNOTT, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., et al., <br><br> Defendants and Respondents. | A141321 <br><br> (Sonoma County <br> Super. Ct. No. SCV-251561) |

Plaintiff Michael Knott, as trustee, appeals a summary judgment on his claim to set aside a foreclosure sale that was entered on the mistaken premise that the court in a prior action had determined the validity of the sale. That premise is entirely without justification.

Despite the known existence of a temporary restraining order (TRO) prohibiting the foreclosure, JPMorgan Chase Bank, N.A. (JP Morgan) proceeded with a nonjudicial foreclosure of plaintiff's home. The bank successfully moved for summary judgment in this action to cancel the foreclosure sale, claiming that when the court in the prior action issued an order extending the injunction but deleted from the proposed order drafted by counsel a provision vacating the sale, it had thereby adjudicated the validity of the sale. Because the prior court never purported to determine the validity of the foreclosure, nor was it ever requested to do so, the judgment must be reversed.

1

**Statement of Facts**

Walter and Mercedes Taylor owned residential real property on Timberhill Road in Santa Rosa (property). In 1996, the Taylors created a family trust and, in April 2006, transferred the property to the trust.[1] Walter died in December 2006.

In May 2007, Mercedes refinanced the property. She obtained a $1 million loan from Washington Mutual Bank (Washington Mutual) secured by the property. At the time, the property was appraised at $1.5 million. The proceeds of the loan paid the balance of an outstanding home loan and provided a cash disbursement of $366,867. The details of the transaction are not fully described by the parties but it appears from deeds included in the record that Mercedes, as trustee of the Taylor family trust, transferred the property from the trust to herself as an individual before obtaining the loan, then transferred the property back to the trust after obtaining the loan.

Mercedes died in June 2008 at age 88. Her sons from a previous marriage, Michael and John Knott (collectively, the Knotts), became co-trustees of the family trust. John died in May 2014 while this case was on appeal, so that Michael is now the sole trustee and appellant. Michael has been living at the property since 1989. The Knotts, as cotrustees, made mortgage payments on the Santa Rosa property from the time of Mercedes's death in June 2008 through September 2008 and assert that Washington Mutual consented to the trust's assumption of the loan.[2]

The Knotts asked Washington Mutual to modify the loan's balance and interest rate because the amount owed exceeded the property's value at the time. They contend Washington Mutual told them they must default on payments to be qualified for a modification and, based on that advice, stopped making loan payments after September 2008.

---

[1] The deed states the trust was created in 1991 but the trust agreement was actually executed in 1996.

[2] There appears to be some dispute on this point. The record contains letters between the Knotts and Washington Mutual stating that the lender would consent subject to certain conditions but it is not clear if final approval was obtained.

Around this time, Washington Mutual went into receivership and JPMorgan acquired certain assets of the failed bank, including the right to service the loan on the Santa Rosa property. The Knotts renewed their request for a loan modification after JPMorgan acquired the loan. In March 2009, defendant California Reconveyance Company (CRC), as agent for the trustee on the deed of trust, recorded notice of default and election to sell the property. A trustee's sale was initially scheduled for July 2009 but was postponed numerous times over the course of a year while a loan modification application was being processed.

***Knott I***

On July 13, 2010, the Knotts's attorney wrote to JPMorgan and CRC informing them that the Knotts were filing suit and seeking a TRO to prevent the trustee's sale scheduled for July 16. The attorney asserted, "The Knotts cannot continue this tortuous game being played by [JPMorgan] as they dangle a loan modification in one hand, refuse to negotiate in good faith, all the while a foreclosure sale hanging over their heads." The Knotts filed suit the next day against JPMorgan and CRC, alleging breach of contract and fraud (SCV-247761, hereafter *Knott I*), and moved for a preliminary injunction together with an ex parte application for a TRO preventing sale of the property.

On July 14, 2010, the court issued a TRO that enjoined defendants "from selling or otherwise encumbering the property until the determination of the request for preliminary injunction" at a hearing set for August 3, 2010. On July 15, the Knotts's attorney faxed the court's order to JPMorgan and CRC and confirmed with CRC by telephone that it received the order. Nonetheless, despite the court's order, CRC proceeded with the trustee's sale on July 16, 2010. JPMorgan acquired the property on a credit bid and on July 26 CRC recorded a trustee's deed.

Unaware of the trustee's sale, the court issued a tentative ruling in advance of the August 3 hearing granting a preliminary injunction enjoining sale of the property.[3]

---

[3] We grant appellant's request for judicial notice of the minute order and reporter's transcript from *Knott I*. (Evid. Code, § 452, subd. (d).)

JPMorgan and CRC did not advise the court of the sale, did not file a response to the motion for preliminary injunction, and did not appear at the hearing. Knott's attorney appeared at the hearing and informed the court the property had been sold in contravention of the court's TRO. Counsel did not know the details. He said JPMorgan's attorney left a telephone "message on my machine last night saying that they own the property now and once this case was adjudicated that we would determine what the status of the property was."

The court adopted its tentative ruling enjoining sale of the property and said it would schedule an early settlement conference "requiring personal appearance of someone from the bank." A minute order was recorded on the day of the hearing stating, "There being no opposition, court adopts its previously published tentative ruling as follows: Plaintiffs' motion for preliminary injunction is granted on the condition that plaintiffs post a bond in the amount of $1,000. The preliminary injunction enjoins the sale of the property at issue."

Sometime after the hearing, Knott's attorney submitted a proposed written order confirming entry of the preliminary injunction. The court accepted the terms of the proposed order confirming the injunction but struck additional paragraphs that counsel had included. In its final form, the court order states that a TRO enjoining sale of the property was in effect from July 14 to August 3, 2010, and that a preliminary injunction "is now issued enjoining" sale of the property by defendants and its agents "throughout the duration of this case." The order also requires plaintiffs to post a bond of $1,000. The court crossed out two paragraphs in the proposed order, one directing JPMorgan's attorney to appear at a settlement conference and the other, which stated: "Defendants/Respondents are ordered to invalidate any sale or encumbrance upon the property that took place in violation of the court's [TRO] or this preliminary injunction. Proof of such invalidation must be submitted to the court no later than _____." The court issued the order on August 9, 2010.

The record reveals no further action in *Knott I* until the action was voluntarily dismissed without prejudice almost two years later, in April 2012. The property was not

4

resold after the trustee's sale. JPMorgan continues to hold title and Michael Knott remains in residence.

***This action.***

The Knotts filed this action on the same day they dismissed their earlier action. The complaint pleads causes of action for quiet title, cancellation of instruments, and injunctive relief.[4] The causes of action are founded on the allegation that the trustee's sale is void because it was conducted in violation of the *Knott I* TRO.

Defendants JPMorgan and CRC filed a motion for summary judgment, contending that the trustee's sale was valid and had been "expressly validated" by the court in *Knott I.* In its statement of undisputed facts, defendants asserted: "On August 9, 2010, the court [in *Knott I*] issued an order enjoining the sale of the property from August 3, 2010 throughout the conclusion of the case. However, the court expressly refused to invalidate JPMorgan's trustee sale of the property on July 16, 2010." By striking that paragraph, defendants asserted, the court had determined that the foreclosure sale was valid. Defendants argued the *Knott I* court declined to order invalidation of the sale at the preliminary injunction hearing "presumably because after the notice of default had been served, plaintiffs had a statutory obligation to pay the amount of the delinquency in order to reinstate the loan to avoid foreclosure – and they did not." Defendants argued that the Knotts's failure to tender the full amount of the debt—at the time of the trustee's sale and currently—forecloses all claims for relief.

In opposing the summary judgment motion, the Knotts did not dispute that the *Knott I* court struck language from the proposed preliminary injunction order that "would have acted to retroactively invalidate" the sale but argued that the order did not adjudicate the ultimate merit of their claim. They argued that the trustee's sale is void because it "proceeded in violation of a court order" and that tender is not required to set aside a void sale.

---

[4] The complaint also pleaded causes of action for declaratory relief and violation of the one-action rule. The court's dismissal of these causes of action is not challenged on appeal.

In defendants' reply brief in support of the summary judgment motion defendants for the first time explicitly invoked the doctrine of collateral estoppel. Defendants insisted that the trustee's sale was valid and that the validity of the sale "has already been decided in defendants' favor. When plaintiffs asked the same judge that issued the July 14, 2010 order enjoining the sale of the property to hold that the subsequent trustee sale on July 16, 2010 violated the July 14, 2010 order, the judge expressly refused to 'invalidate' the sale or hold that the sale 'took place in violation of the court's [TRO] or this preliminary injunction.' Thus, the legal issue as to whether or not the July 16, 2010 trustee sale is 'invalid,' as claimed by plaintiffs has already been decided by this court in the order in the previous action, dated August 9, 2010. . . . Thus, plaintiffs are collaterally estopped from relitigating this issue in another action."

The trial court granted summary judgment, explaining that "the key to this lawsuit and every cause of action seems to be plaintiffs' claim that the sale was improper in light of the TRO." Yet, "[t]he undisputed evidence . . . demonstrates that in the prior action the court granted a preliminary injunction barring any sale of the property at that point, but expressly rejected any language invalidating the sale that had already occurred. Further, it is undisputed that plaintiffs dismissed that prior action without prejudice without obtaining any relief regarding the sale." The trial court also stated that, "[i]n any event, . . . the loan was in default, plaintiffs failed to cure the default, defendants recorded the proper instruments, and plaintiffs admitted in deposition that they had no money or income that would allow them to pay the loan payments."

Judgment for defendants was entered on January 28, 2014, and the Knotts timely filed notice of appeal.

**Discussion**

"In reviewing a grant of summary judgment, we independently evaluate the record, liberally construing the evidence supporting the party opposing the motion, and resolving any doubts in his or her favor. [Citation.] As the moving party, the defendant must show that the plaintiff has not established, and reasonably cannot be expected to

establish, one or more elements of the cause of action in question." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.)

As defendants acknowledge, "The entire basis of the trial court's order granting [their] motion rested on the conclusion that [the judge in the prior action] simply refused to invalidate a completed sale." The trial court, at defendants' urging, found that the court in *Knott I* adjudicated the sale to be valid and that the prior adjudication is binding in this action. Defendants defend that finding here, expressly abandoning reliance on collateral estoppel,[5] and now asserting that the trial court's order is justified on the basis of "comity."

Defendants rely upon *People v. Quarterman* (2012) 202 Cal.App.4th 1280, 1293, which states: " '[F]or reasons of comity and public policy . . . trial judges should decline to reverse or modify other trial judges' rulings unless there is a highly persuasive reason for doing so.' " "Encouraging parties to pursue their appellate remedies, instead of asking a different judge to rehear a matter that was decided adversely to them the first time, serves the purpose of preserving the integrity of the judicial system, and promotes respect for the judicial process." (*Ibid.*)

Defendants' argument founders on the simple fact that the trial court in the prior action made no determination that the trustee's sale was valid. In striking portions of the proposed preliminary injunction order, the judge in *Knott I* simply struck language that went beyond the court's ruling. The extent of the court's ruling was to grant the unopposed motion for a preliminary injunction. The court was never asked to rule on the ultimate merit of the plaintiff's claim that the defendants were not entitled to foreclose or that the foreclosure sale was invalid. The court only learned of the sale on the day of the hearing and the information provided was scant and second-hand. The Knotts did not request invalidation of the sale at the hearing nor did defendants request the court to determine the validity of the foreclosure sale. The court did not purport to rule on the

---

[5] Defendants concede they did not raise the issue of collateral estoppel until their summary judgment reply brief and that such belated arguments are improper.

validity of the sale, as reflected in the reporter's transcript of the hearing and the court's minute order. Indeed, that the court did not pass on that question is reflected by the very terms of the corrected written order that the court did sign; that an affirmative ruling can be imputed to language struck from an order is a rather preposterous contention for which defendants understandably cite no authority.

A party prevailing on a motion is required to prepare a proposed order and its proposal should conform to the trial court's announced ruling. (Cal. Rules of Court, rule 3.1312.) It is not unusual, however, for a judge to add, delete, or alter language to a proposed order to conform to the court's ruling. The proposed order itself is without effect, as is any language in a proposed order rejected by the court. It is beyond dispute that by striking language from the proposed preliminary injunction order, the court did not adjudicate the merits of plaintiff's claim.

Defendants present no other basis for holding the trustee's sale to be valid so as to entitle them to summary judgment. The sale was conducted when a TRO was in effect despite notice of the order. At the summary judgment hearing, defendants' attorney conceded that the trustee's sale proceeded despite a TRO. The only explanation offered for the sale in direct violation of the court order was "one hand at [JPMorgan] did not know what the other hand was doing, and somehow the property was sold . . . ."

In the prior action the Knotts might have petitioned to hold JPMorgan in contempt and to set aside the sale. (*Bagley v. Ward* (1869) 37 Cal. 121, 139.) It is not clear why they did not pursue those remedies in that action, but their failure to do so does not negate their right to relief in the present action. A long line of cases holds that a sale of real property in violation of an injunction, while not void, is voidable. (*Ibid.*; *Powell v. Bank of Lemoore* (1899) 125 Cal. 468, 472; *De Albergaria v. American Trust Co.* (1932) 126 Cal.App. 59, 60; *Warburton v. Kieferle* (1955) 135 Cal.App.2d 278, 283.) "In such case, upon a proper showing by a party entitled to the consideration of a court of equity, relief may be granted by setting aside such sale." (*Powell*, *supra*, 125 Cal. at p. 472.)

Defendants wrongly argue that the sale cannot be voided absent tender of payment. It is true that "[a] defaulted borrower who seeks to set aside a trustee's sale

8

ordinarily is required to tender the full amount of the debt for which the property was security." (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2015) ¶ 6:535.15b.) " 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.) But "a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." (*Id.* at p. 113; accord *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1373.)

Plaintiff seeks equitable cancellation of a trustee's deed executed in violation of a lawfully issued TRO meant to restrain sale pending resolution of unsettled fraud and contract claims. Assuming plaintiff was financially incapable of tendering the balance due on the loan, nonetheless it cannot be said that he is undamaged by the trustee's sale conducted in violation of the TRO. The outcome of the litigation may have established that he did not owe the amount demanded by the bank. Moreover, the sale conducted in violation of the TRO was in effect a sale without notice that the sale would occur. Even a homeowner who cannot redeem the property or reinstate the loan must be afforded notice of the time and place of sale to provide an opportunity to attend the sale and ensure that his or her interests are protected. (*Ragland v. U.S. Bank, N.A.* (2012) 209 Cal.App.4th 182, 202.) To deny relief for want of tender under the circumstances presented here would defeat the protections afforded by the court's injunction.

## Disposition

The judgment is reversed. Appellants shall recover costs incurred on appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278(c).)

9

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.